**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

IN RE: GOLD KING MINE RELEASE IN SAN
JUAN COUNTY, COLORADO, ON AUGUST 5,
2015

*This Document Relates to:*
  *C.A. No. 1:16-cv-00465-WJ-LF*
  *Consolidated with 16-cv-00931*

C.A. No. 1:18-md-02824-WJ

**PLAINTIFFS THE STATE OF NEW MEXICO AND
THE NEW MEXICO ENVIRONMENT DEPARTMENT'S
MOTION FOR PROTECTIVE ORDER REGARDING DEPOSITION TOPICS**

Plaintiffs, the State of New Mexico and the New Mexico Environment Department (together, "Plaintiffs" or "New Mexico"), hereby move pursuant to Federal Rule of Civil Procedure 26(c) for a protective order regarding Topics 1(c), 2, 3, 4, 5, 6, 7, and 8 identified in Defendant United States of America's Notice of Deposition Pursuant to Federal Rule of Civil Procedure 30(b)(6) of designees of "the State of New Mexico on behalf of the New Mexico Environmental Department" (the "Notice", attached hereto as Exhibit A). In support of this Motion, Plaintiffs would respectfully show the Court as follows:

## I.    INTRODUCTION

Since the opening of discovery almost a year and a half ago, the United States of America ("U.S.") has attempted to force Plaintiffs, the State of New Mexico and the New Mexico Environment Department ("Environment Department"), to provide documents from many different independent agencies of the State that are ***not*** parties to this action.[1] The limits on the Attorney General's authority to produce discovery from independent agencies of the State – for

---

[1] The State of New Mexico has produced, and continues to produce, documents in the care, custody, or control of both the Office of the Attorney General and the Environment Department, the parties to the instant litigation, as required by the Federal Rules of Civil Procedure.

example, the New Mexico Energy, Minerals and Natural Resources Department, the New Mexico Department of Health, and New Mexico State University – have been discussed with the Court and with counsel for the U.S., repeatedly, for well over a year. The U.S. understands these issues and the distinctions between Rules 30, 34 and 45 of the Federal Rules of Civil Procedure. The U.S. has now escalated this discovery issue by serving the Notice under Rule 30(b)(6), purporting to require the Attorney General to produce a representative witness for each of a dozen or more independent agencies of the State. (*See* Ex. A). As discussed herein, the Notice is facially overbroad and objectionable in its scope, and it is being used by the U.S. to conjure a standing issue that does not exist. Because the U.S. has conflated this very simple discovery dispute with a dispute on standing, it is important to discuss and distinguish these separate disputes, so this confusion can be resolved along with the disputes.

Until October 2019 (i.e., three years into the lawsuit), the U.S. never had a dispute with New Mexico regarding discovery or standing, despite having notice of the nature of New Mexico's tort claims and economic damages since May 2016. Rather, it was not until a separate lawsuit was filed, by different outside counsel but involving the same Plaintiffs (the State of New Mexico and the Environment Department) and one defendant (the United States),[2] related to an entirely different area (Air Force Bases far from the Animas River and San Juan River west of Farmington) and different contaminants (per- and poly-fluorinated substances instead of heavy metals associated with mining operations), that the U.S. drummed up its discovery/standing dispute in this case. For the past year, New Mexico has been clear that it cannot compel independent executive branch agencies to produce documents or witnesses, but that the Attorney General would

---

[2] Neither the Contractor Defendants (Environmental Restoration and Weston Solutions) nor the Mining Defendants (Sunnyside Gold Corporation, Kinross Gold U.S.A., Inc. and Kinross Gold Corporation) are defendants in the PFAS Litigation.

work with those agencies to see if they would voluntarily produce the information requested by the U.S. and other defendants. For example, to date, the Attorney General has produced documents and information in the litigation voluntarily provided by the New Mexico Taxation and Revenue Department (SNM00010308-390), the New Mexico Tourism Department (SNM00029247-419), and the New Mexico Energy, Minerals and Natural Resources Department's Abandoned Mine Land Program (i.e., New Mexico's Amended Responses to the U.S.'s Interrogatory Nos. 5-7 and Requests for Production Nos. 33-35, served on October 1, 2020). Moreover, the other defendants in this lawsuit other than the U.S. have utilized the proper discovery mechanisms, to wit, subpoenas and Inspection of Public Records Act ("IPRA") requests, to obtain necessary discovery as permitted by law. In an effort to create the appearance of a standing deficiency, the U.S. simply refuses to utilize the proper mechanisms afforded it by the Federal Rules of Civil Procedure or New Mexico's open governance laws, or to abide by the law of New Mexico that recognizes a divided executive form of government. Now, the U.S. has attempted to create the appearance of an even greater issue by issuing the Notice, seeking representative testimony from almost a dozen independent agencies of the State. The U.S.'s litigation strategy is not supported by the Federal Rules of Civil Procedure, and its substantive position is untenable under applicable law and the New Mexico Constitution.

To be clear, there are two distinct disputes that the U.S. has attempted to join through the Notice: (1) the "Discovery Dispute" and (2) a purported "Standing Dispute" (both defined below). These two disputes are separate and distinct and should not be confused as one dispute as repeatedly argued by the U.S. As shown below, the Attorney General cannot compel independent, non-party State departments or agencies to provide discovery, either through Rule 34 document

requests or Rule 30(b)(6) deposition witnesses, and Plaintiffs have standing to bring all claims in this lawsuit.  Accordingly, the Court should grant Plaintiffs' Motion for Protective Order.

## II.     THE STANDARD OF REVIEW

"A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . [and] [t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" FED. R. CIV. P. 26(c)(1). A party seeking a protective order must show "good cause[.]" *Id*. "To establish 'good cause' for a protective order under Federal Rule of Civil Procedure 26(c), courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981) (citations omitted).

Rule 30(b)(6) "requires a company to . . . appoint someone *it has control over*, such as an employee, or a consenting individual, whom the company has prepared to answer questions relating to the information sought by the deposing party[.]" *Wachovia Sec., LLC v. NOLA, LLC*, 248 F.R.D. 544, 548-49 (N.D. Ill. 2008) (emphasis added).[3] Thus, here, the U.S. has the added burden of proving that New Mexico has control over the witnesses it seeks to depose.

Good cause exists to grant this Motion for Protective Order. Moreover, the U.S. has failed to demonstrate that either the Attorney General or the Environment Department has control over the requested deponents.

---

[3] Similarly, Rule 34 allows a party to serve requests to produce certain items "on any other party . . . *in the responding party's possession, custody, or control*." FED. R. CIV. P. 34(a)(1) (emphasis added); *see also United States v. 2121 Celeste Road SW, Albuquerque, N.M.*, 307 F.R.D. 572, 590 (D.N.M. 2015) (denying a motion to compel, because the discovery requested was not in the opposing party's custody or control); *XTO Energy, Inc. v. ATD, LLC*, No. 14-1021 JB/SCY, 2016 WL 1730171, at *23 (D.N.M. Apr. 1, 2016). The party seeking production bears the burden of proving that the opposing party has the control that Rule 34 requires. *See Norman v. Young*, 422 F.2d 470, 472 (10th Cir. 1970); *XTO Energy, Inc.*, 2016 WL 1730171, at *23.

## III.    THE TWO UNRELATED DISPUTES

### A.    The Discovery Dispute at Issue in This Motion for Which Protection Is Warranted

#### 1.    The State of New Mexico Has a "Divided Executive" Structure

The U.S. attempts to force the State of New Mexico or the Environment Department to produce deponents (and previously documents) from various departments and agencies of the State that are **not** parties to this action. The State has resisted these discovery attempts (except where it has been able to acquire the information voluntarily, as discussed above[4]) because it has absolutely no power to compel these other agencies to provide either documents or deponents. The other defendants in this case recognize this basic fact and have issued proper discovery on these independent agencies via subpoenas or IPRA requests. *See* N.M. STAT. ANN. §§ 14-2-1 et seq. The U.S. refuses to do the same and instead wastes this Court's and New Mexico's time by trying to use a discovery dispute to create a purported "Standing Dispute."

The reason that the State of New Mexico, through the Office of the Attorney General ("OAG"), cannot compel production of documents or deponents from these nonparty departments or agencies is because the State of New Mexico has a **dual executive** branch (also known as a "**divided executive**" branch). The State of New Mexico's executive branch therefore consists of, among other positions, (1) the Governor, who is elected by the people, and (2) the Attorney General, who **also** is elected by the people (i.e., **not** appointed by the Governor) and does not serve at the will of the Governor. This dual executive branch is not comparable to the U.S.'s unified

---

[4] The State of New Mexico has adopted the production of thousands of documents that initially were produced by various independent agencies, including those identified below, pursuant to IPRA requests served by other defendants in this litigation. *See* Ex. B (providing a list of those documents and their bates numbers). The Attorney General also has requested voluntary production of information from several of these non-party entities and has produced and continues to produce all responsive information that it has received to date. *See*, *e.g.*, SNM00010308-390; SNM00029247-419; New Mexico's Amended Responses to the U.S.'s Interrogatory Nos. 5-7 and Requests for Production Nos. 33-35, served on October 1, 2020.

executive branch, in which the President appoints (and can direct the actions of) the U.S. Attorney General and all federal agencies. New Mexico has not adopted the U.S.'s model of an "unitary executive," and neither has a vast majority of the states. Indeed, 43 states have adopted a "divided executive" model, similar to New Mexico's. *See* Council of State Governments, THE BOOK OF STATES, *located at* https://knowledgecenter.csg.org/kc/content/bos-2000-01-chapter-2-state-executive-branch & Table 2.10 ("Selected State Administrative Officials: Methods of Selection"), *located at* https://knowledgecenter.csg.org/kc/system/files/table_2.10_3.pdf (last visited Oct. 24, 2020) (Table 2.10 is attached hereto as Exhibit D). This "divided executive" model empowers the people of these 43 states to elect their attorneys general and apportion executive power among different executive officers who are not subject to gubernatorial control. *See* William P. Marshall, *Break up the Presidency? Governors, State Attorneys General, and Lessons from the Divided Executive*, 115 YALE L. J. 2446, 2448 (2006) (hereinafter "*Break up the Presidency?*") (citing Patrick C. McGinley, *Separation of Powers, State Constitutions & the Attorney General: Who Represents the State?*, 99 W. VA. L. REV. 721, 722 (1997)). Further, state separation-of-powers doctrines afford each of the statewide elected officials, including the attorneys general, significant independence. *See, e.g.*, *Perdue v. Baker*, 586 S.E.2d 606, 611 (Ga. 2003) ("The State of Georgia is not one branch of government, one office, or one officer. The State's authority resides with people who elect many officers with different responsibilities under valid law."). Consistent with this approach, a state's attorney general in a "divided executive" system may not be removed by the state's governor in all states except Alaska and Wyoming. *See Break up the Presidency?*, *supra*, at 2448 n.3.

Because the "duality of the States' executive branches" refers to the independent operation of a state's governor and attorney general, courts have held in actions like this one brought by a

state attorney general, that other state agencies are not parties to the action when the attorneys general are independent, elected officials pursuant to the states' constitutions and the offices of the attorneys general and the other agencies are not under common executive control. *See United States v. Am. Express Co.*, No. 10-CV-04496, 2011 WL 13073683, at *1-2 (E.D.N.Y. July 29, 2011) ("[T]he State Attorneys General are independent, elected officials pursuant to the States' constitutions. In all cases, the dual structure of the States' executive branches was purposeful; the State Attorneys General are to operate independently of the State Governors."); *In re Jointly Managed R.S. 2477 Rd. Cases Litig. v. United States*, No. 2:10-CV-1073, 2018 WL 2172934, at *2 (D. Utah May 10, 2018) (holding that a state agency was not a party to an action brought by the Utah Attorney General where both the governor and attorney general were independently elected officials, with separate duties, under the Utah Constitution.); *New York ex rel. Boardman v. Nat'l R.R. Passenger Corp.*, 233 F.R.D. 259, 263 (N.D.N.Y. 2006) (hereinafter "*Amtrak*") ("The Plaintiff correctly observes that Amtrak has erroneously construed all executive agencies of the State as one entity. The New York State Constitution in its infinite wisdom contemplated a separation of powers within the executive branch of government."); *Greyhound Lines, Inc. v. Dep't of Cal. Highway Patrol*, 213 Cal. App. 4th 1129, 1134-35, 152 Cal. Rptr. 3d 492, 495-96 (2013) ("As noted by the court in *Lockyer*, '[e]ach agency or department of the state is established as a separate entity, under various state laws or constitutional provisions.' CHP and Caltrans are governed by different statutory schemes and have different organizations, powers and duties. . . . Thus, in the ordinary course of their duties, CHP and Caltrans are distinct and separate government entities." (citations omitted)). In short, information held by other state agencies is not in the possession, custody, or control of the attorney general.

Here, as in the above-cited cases, the Attorney General and the Governor are independently elected officials with separate duties under the New Mexico Constitution. *See* N.M. CONST. art. V, § 1; N.M. STAT. ANN. §§ 8-1-1 to -5-18. The Attorney General is not included in Sections 9-1-1 to 9-28-7 of the New Mexico Statutes, which list the New Mexico departments and agencies under gubernatorial control. *See* N.M. STAT. ANN. §§ 9-1-1 to -28-7. Accordingly, the Attorney General brought this suit, as it must, in the name of the State, under its own authority, and it ***also***, in agreement with the Governor and Secretary of the Environment Department, brought this suit on behalf of the Environment Department. *See* N.M. STAT. ANN. § 8-5-2(B).

It is understandable that this duality in structure is foreign to counsel for the U.S., given that it has a unified executive branch. *See*, *e.g.*, Tr. of June 26, 2020 Telephonic Hrg. & Status Conference (Ex. C at 20:6-14) (statement by the U.S.'s counsel that he "would like to see that authority because [he] just c[ould]n't believe that's true, ***having represented the Government, the United States Government, for a very long time***." (emphasis added)). Nonetheless, the distinctions and differences in the form of New Mexico's Government are real, and the U.S. cannot require the State of New Mexico to conform to a unified structure. As has been repeatedly requested by New Mexico, the U.S. need only issue subpoenas or IPRA requests on the nonparty agencies like other defendants in this case have done. Instead, for the self-serving purpose of drumming up the Standing Dispute, the U.S. has chosen to repeatedly attempt the same tactic, causing New Mexico and this Court to expend considerable resources and creating confusion in the litigation by improperly trying to force the Attorney General to require nonparty agencies to provide discovery and deponents—***something the Attorney General simply cannot do***.

2. **Because of the State's "Divided Executive" Structure, the Attorney General Cannot Be Compelled to Respond to Discovery Directed at Nonparty Departments or Agencies and the U.S. Has Failed to Meet its Burden**

With respect to the improper Notice, the U.S. has demanded that the Attorney General produce a deponent to serve as a representative and bind multiple, independent, nonparty State departments and agencies, including:

1. "The New Mexico Environment Department's authority and duties with respect to . . . (c) recovering economic damages for economic losses in the form of reduced business";

2. "The work done by the New Mexico Abandoned Mine Land Program to identify and survey abandoned mines within the State of New Mexico, including determining whether abandoned mines contain impounded water that could present an environmental hazard and/or present the risk of a blowout";

3. "The practices, procedures, and policies of the New Mexico Abandoned Mine Land Program with respect to remediation and/or reclamation of abandoned mines in the State of New Mexico, including but not limited to site health and safety plans, safety training, opening abandoned mines, drilling into abandoned mines, measuring impounded water in abandoned mines, mapping abandoned mines, insuring the stability of walls or structures of abandoned mines during the work, and installation of sump basins or drainage ponds in connection with abandoned mines";

4. "Any assessment that the New Mexico Department of Taxation and Revenue has conducted on the factors affecting the amount of tax revenue collected by the State of New Mexico";

5. "Any assessment that the New Mexico Department of Tourism has conducted on factors affecting tourism in the State of New Mexico from 2010 to present";

6. "Any assessment that the New Mexico Department of Agriculture has conducted on factors affecting agriculture in New Mexico, and in particular, San Juan County in the State of New Mexico from 2010 to present";

7. "Any assessment that the New Mexico Energy, Minerals and Natural Resources Department, the New Mexico Department of Game and Fish, the New Mexico Department of Health, New Mexico State University, the New Mexico Bureau of Geology and Mineral Resources, the New Mexico Water Resources Research Institute, the New Mexico Institute of Mining and

Technology, or the University of New Mexico, or any other New Mexico state agency or entity conducted on the effect of the August 5, 2015, Gold King Mine release on the environment in New Mexico"; and

8.     "Any assessment that the New Mexico Energy, Minerals and Natural Resources Department, the New Mexico Department of Game and Fish, the New Mexico Department of Health, New Mexico State University, the New Mexico Bureau of Geology and Mineral Resources, the New Mexico Water Resources Research Institute, the New Mexico Institute of Mining and Technology, or the University of New Mexico, or any other New Mexico state agency or entity conducted on the effects of any releases since August 2015 from the Gold King Mine or the Sunnyside mine pool on the environment in New Mexico."

Ex. A at 1-3. Though many of these topics are hopelessly vague and harassing, *see infra* Section IV, this is the kind of information the U.S. has every right to seek (if properly tailored) directly from the various New Mexico agencies it has identified; however, it cannot force the Attorney General or the Environment Department to produce Rule 30(b)(6) witnesses from independent state agencies that are clearly outside of the Attorney General's or Environment Department's control.[5]

Courts addressing the issue of available discovery in "divided executive" states have consistently held that when state attorneys general bring actions on behalf of their respective states, the attorneys general could not be compelled to produce documents in the possession of independent, nonparty state agencies. Because of this "duality" or "divided executive" structure, the Attorney General does not have control over nonparty State agencies. Consequently, the Attorney General has no power to compel those nonparty agencies to produce discovery, including Rule 30(b)(6) deponents. Despite the U.S.'s counsel's unfamiliarity with it, this is actually a simple and well-accepted concept. *See*, *e.g.*, *Amtrak*, 233 F.R.D. at 266-68 (rejecting Amtrak's assertion,

---

[5] Again, every other defendant to seek this information has sought it directly from the identified agencies either via subpoena or IPRA request. The U.S. is the only entity bent on using this purported discovery dispute as a way to conjure a standing problem. Neither exist.

in a case where the state was only a nominal party unlike here, "that when a governmental agency is a plaintiff, it may be required to produce the document of another agency" and holding that the New York Attorney General had no obligation to produce documents in the possession of the Office of State Comptroller); *Am. Express Co.*, 2011 WL 13073683, at *2 ("In almost every case, the State Attorneys General are independent, elected officials pursuant to the States' constitutions. In all cases, the dual structure of the States' executive branches was purposeful; the State Attorneys General are to operate independently of the State Governors. . . . [T]hese state agencies . . . are neither subject to common executive control nor interrelated with the State Attorneys General, and so should not be aggregated together for discovery purposes.").[6]

As noted, to the extent the U.S. seeks to depose a representative of an agency other than the Environment Department in this litigation, it must subpoena each agency directly. Here, the U.S. seeks to compel the Attorney General or Environment Department to produce 30(b)(6) witnesses on behalf of various independent, nonparty executive agencies for deposition. But the Plaintiffs in this lawsuit are the State of New Mexico and the Environment Department, both

_____

[6] *See also Colorado v. Warner Chilcott Holdings Co. III, Ltd.*, No. CV 05-2182 (CKK) (AK), 2007 WL 9813287, at *3-4 (D.D.C. May 8, 2007) (noting that "Amtrak firmly supports the view that, where two government agencies are neither interrelated nor subject to common executive control, they will not be aggregated together for purposes of discovery" and holding that the court could not compel states' attorneys general to produce documents in the possession of the respective state's Medicaid agency); *In re Jointly Managed R.S. 2477 Rd. Cases Litig.*, 2018 WL 2172934, at *2 ("Courts that have dealt with these issues in the state agency context have resisted treating various state agencies as parties when there is a 'duality of the State's executive branches' such that the states' attorneys general cannot 'force the separate state entities to produce documents.'"); *Commonwealth v. Ortho-McNeil-Janssen Pharm., Inc.*, No. 2011-2811-BLS, 2012 WL 5392617, at *2-3 (Mass. Super. Ct. Oct. 5, 2012) ("The first [concern] stems from the recognition that all agencies and departments within the executive branch do not speak with a single voice. In fact, they have different functions and spheres of responsibility, and some operate as quasi-independent agencies. . . . [A]gencies are not part of a monolithic whole[.] . . . The second concern goes to the relationship between the governor and the Attorney General. Each of them is an elected official operating independently of the other. If this Court were to conclude that state agencies, even those within the executive branch, necessarily become 'parties' for discovery purposes any time that the Attorney General exercises her exclusive authority to bring an enforcement action, that could upset the constitutional balance of power."); *Torres v. Artus*, No. 14CV62S, 2016 WL 1105840, at *5 (W.D.N.Y. Mar. 22, 2016) (denying motion to compel production of nonparties' materials and concluding that "although the New York State Attorney General's office represents defendants here as well as various state agencies, those agencies are not parties to this action to compel defense counsel here to produce documents from them in this case. State agencies are not "entities of each other[.]").

represented by the Attorney General. Other state agencies and departments are not parties to this case. Thus, the Attorney General cannot be compelled through discovery procedures appropriate for parties to produce documents, electronically stored information, or tangible things that are in the possession, custody, or control of those nonparty agencies and departments.[7] Similarly, as the above case law demonstrates, the Attorney General cannot be compelled to produce representatives of those independent agencies for deposition, either. *See also People ex rel. Lockyer v. Superior Court*, 122 Cal. App. 4th 1060, 1076-77, 19 Cal. Rptr. 3d 324, 335-37 (2004) (holding, in action by the People against vision companies for violation of statutes governing practice of optometry, that the ***trial court erred in denying the People's motion to quash deposition notices that requested that they produce for deposition persons most knowledgeable from state agencies that were not parties to the action*** and documents to accompany the deponents).

The Environment Department, the New Mexico Mining and Minerals Division, the New Mexico Department of Taxation and Revenue, the New Mexico Department of Tourism, the New Mexico Department of Agriculture, the New Mexico Department of Game and Fish, the New Mexico Department of Health, New Mexico State University (including but not limited to New

---

[7] While the Attorney General may request, and has requested in this litigation, documents from independent agencies, and seek their voluntary participation in providing the documents to the Attorney General for production in the litigation, courts have recognized that this is not a basis for a motion to compel under Federal Rule of Civil Procedure 45:

> Although I have no doubt that informally the State Attorneys General could probably make these requests of each agency and garner voluntarily participation, the issue of control is problematic since state agencies operate outside of the State Attorneys General's authority. Legally, the State Attorneys General have no more way of compelling production than Amex does if an agency refuses to cooperate. I cannot order a party to produce that which it does not have, and that to which it does not have any right or recourse to acquire.

*Am. Express Co.*, 2011 WL 13073683, at *3.

As noted, to the extent the U.S. seeks to challenge any such voluntary production (which it has not to date), it would have to either subpoena the documents from the agency in question and move to enforce that subpoena or file an IPRA request with the agency and then file suit to enforce that request.

Mexico Water Resources Research Institute), New Mexico Tech (including but not limited to the New Mexico Institute of Mining and Technology), and the University of New Mexico are not interrelated agencies, do not have similar missions, and are situated at different positions along the spectrum of state governance. Moreover, they have no overlapping goals and do not have the ability to share or control each other's' agendas, documents, or personnel. The U.S. has not shown how the Attorney General, the Environment Department, or any of the nonparty entities from which it seeks discovery relate to one another so that they may be properly treated as a single entity for purposes of this case, because the facts simply do not support that treatment. Nor has the U.S. shown that the Attorney General is acting at the behest of any agency in the executive branch in this litigation other than the Environment Department, an explicit party to the litigation.

Based upon the foregoing, it is clear that (1) good cause exists to protect the State of New Mexico and the Environment Department from producing witnesses from independent agencies over which neither has any control, and (2) the U.S. has failed to demonstrate that the requested information and deponents are in the care, custody, or control of the Plaintiffs in this litigation. Plaintiffs respectfully request that their Motion for Protection be granted.

**B.    The Purported "Standing Dispute" (That is Not at Issue Here but That the U.S. Has Conflated With the Discovery Dispute)[8]**

The prior section should necessarily put this Motion for Protective Order to bed. Unfortunately, because of its refusal to accept the law regarding New Mexico's "divided executive" structure, the U.S. has chosen to create a standing issue out of whole cloth where there is none. To be clear, this purported Standing Dispute (which does not exist) is absolutely separate from the Discovery Dispute. Both the State of New Mexico and the Environment Department have

---

[8] However, the purported "Standing Dispute" is the subject of the U.S.'s Motion to Dismiss (ECF No. 876), filed on October 22, 2020, to which New Mexico will be filing a separate Response in Opposition.

standing to pursue the claims in this case. For more than a year, the U.S. has refused to recognize that the State of New Mexico, through the Office of the Attorney General, is the ***sole*** entity with statutory authority both to seek damages for the State and to represent the Environment Department in its claims against the U.S. and its co-defendants. As noted above, the Attorney General, in agreement with the Secretary of the Environment Department, brought this case on behalf of the State of New Mexico and the Environment Department.

The U.S.'s purported standing issue is all about the ***caption*** on the Complaint. Plaintiffs filed this lawsuit on May 23, 2016. Plaintiffs have been transparent for ***years*** regarding the parties to this lawsuit, the claims brought, and the damages sought. As detailed in the U.S.'s Motion to Dismiss, even before this action was filed, New Mexico demanded <u>both</u> environmental response costs and the economic damages and tax losses caused by the U.S. as a result of the Gold King Mine Blowout. For years, the U.S. has been litigating these issues and seeking discovery on New Mexico's tax losses. For years, the Attorney General has been responding to discovery on the tax losses and damages the State is seeking, too. But now, as we near the close of discovery, the U.S. is attempting to create a standing issue by serving a patently overbroad Notice on the Attorney General and Environment Department. This use of discovery processes as a strategy to construct a standing argument is both improper and ineffective, and to countenance the U.S.'s use of this strategy would prejudice New Mexico.

Indeed, for years there was no hint of confusion or question that the State of New Mexico, represented by the Attorney General, is a party in this lawsuit. The U.S. did not create this issue until it was served with a complaint in an entirely different lawsuit involving the same Plaintiffs and the United States as a defendant but related to contamination at and around Cannon and Holloman Air Force Bases, arising from per- and poly-fluorinated substances (the "PFAS

Litigation"). Because the same Plaintiffs are bringing claims against the U.S. in the PFAS Litigation under a slightly different style on the complaint, the U.S. is now arguing that the State of New Mexico is not actually a plaintiff here. *See* U.S. Mot. to Dismiss at 8 (comparing the caption of the complaint in this case ("The State of New Mexico on behalf of the New Mexico Environment Department") to the caption of the 2019 complaint in the PFAS Litigation ("State of New Mexico, *ex rel.* Hector Balderas, Attorney General, and the New Mexico Environment Department")). While the complaint in this case was structured differently, the U.S. could have filed a Rule 12(b)(1) motion and/or a Rule 12(e) motion for more definite statement years ago if it did not understand the Attorney General was representing the State of New Mexico in this action, neither of which it chose to do.[9] Instead, the U.S. lay behind the log and waited almost four years to move to dismiss and only recently decided to do so after New Mexico advised the U.S. through the meet-and-confer process that it would be seeking protection from the Notice because it was being used to create a standing issue that did not exist, thereby wasting the Court's and the parties' resources.[10]

But as the U.S. is quite aware, a caption does not control the complaint and the causes of action within it, especially when substantive allegations demonstrate the different parties' claims. *See*, *e.g.*, Second Am. Compl. (ECF No. 339) (filed Oct. 17, 2019) ¶ 13 (pleading that the State of New Mexico is a plaintiff); *id.* ¶¶ 111-118 (describing the State's distinct environmental and economic injuries); *id.* ¶¶ 149-170, 171-185, 186-195 (pleading that the State is seeking remedies

---

[9] An appropriate remedy for a Rule 12(e) motion for more definite statement is to file an amended pleading. *See Jackson v. City of Leland*, No. 4:18-CV-181-SA-JMV, 2019 WL 1916196, at *4 (N.D. Miss. Apr. 30, 2019). In addition to this Motion, New Mexico will promptly file a motion for leave to amend its Complaint to comport the caption of the instant case with the caption of the PFAS Litigation to dispel, once and for all, any perceived discrepancy by the U.S.

[10] Discovery is still ongoing and has, only this week, pivoted away from personal jurisdiction discovery related to the Mining Defendants to the U.S.'s and Contractor Defendants' liability and defenses. Hence, the U.S. has suffered absolutely no prejudice from its purported misunderstanding of the identities of the Plaintiffs.

for its tort claims). "The caption of a complaint constitutes no part of the statement of the cause of action, and the rights of parties to relief cannot be made to depend upon what may appear in the caption of the case." *Lund ex rel. Wilbur v. Pratt, Me.*, 308 A.2d 554, 557 (Me. 1973). Thus, a court may properly look beyond the formal caption to the allegations in the body of the complaint to determine the proper parties to the claims. *See Hoffman v. Halden*, 268 F.2d 280, 303-04 (9th Cir. 1959), *overruled on other grounds*, 300 F.2d 24 (9th Cir. 1962); *Tyrolf v. Veterans Admin.*, 82 F.R.D. 372, 375 (E.D. La. 1979). *See generally* 5A Wright & Miller, FED. PRAC. & PROC. § 1321 (4th ed. 2020); *Beaulieu v. City of Lewiston*, 440 A.2d 334, 343 (Me. 1982). Courts may permissibly look to a complaint's substantive allegations when determining whether to amend a caption to reflect the correct identities of the parties to an action. *See* 5A Wright & Miller, FED. PRAC. & PROC. § 1321 (4th ed. 2020) (noting that courts "generally" modify case captions "[i]f the body of the complaint correctly identifies the party being sued"); *Eberhard v. Old Republic Nat'l Title Ins. Co.*, No. 1:11 CV 834, 2013 WL 12293449, at *5 (N.D. Ohio Sept. 13, 2013) ("[T]he determination of whether a defendant is properly in the case depends upon the allegations in the body of the complaint."); *Rice v. Hamilton Air Force Base Commissary*, 720 F.2d 1082, 1085 (9th Cir. 1983) ("A party may be properly in a case if the allegations in the body of the complaint make it plain that the party is intended as a defendant" even where the party is not correctly identified in the case caption); *Gilreath v. North Carolina ex rel. Cumberland Cty. Bd. of Educ.*, No. 5:11–CV–00627–BR, 2012 WL 1219765, at *4-5 (W.D.N.C. Apr. 10, 2012) (examining "the body of the complaint" to determine the "intended" and named defendant where plaintiff did not "properly identif[y] the [defendant] in the caption"). Here, the State of New Mexico and the Environment Department are plainly both parties. Indeed, if the only plaintiff was the Environment Department, the complaint would have been executed by the Secretary of the Environment Department. ***To the***

*contrary, the complaint in this case was executed by "Hector H. Balderas, New Mexico Attorney General." See* Second Am. Compl. (ECF No. 339) at 58 (emphasis added).

As noted above, the U.S. did not once question the State's standing to bring this case until late 2019 after it had been served with a complaint in the unrelated PFAS Litigation containing a slightly different caption. Since that time, at every telephonic hearing or conference with this Court in which this issue has been raised, Plaintiffs have expressly clarified their positions, either with respect to discovery or with respect to standing. When the Discovery Dispute discussed above was first raised with the Court at an October 28, 2019 meet and confer, the undersigned explained its position with respect to the fact that the Attorney General could not compel discovery from independent, nonparty agencies. At that conference, *the U.S. did not raise the issue of standing*. This meet and confer was followed up by a self-serving letter from the U.S. to the undersigned counsel regarding the discovery dispute, again with *no mention of standing concerns*. *See* U.S. Mot. to Dismiss at 3. Immediately following that meet and confer, at an October 31, 2019 telephonic status conference, the undersigned counsel again discussed the Discovery Dispute, explaining that the Environment Department could not compel another state agency to respond to party discovery requests. *See* Tr. of Oct. 31, 2019 Telephonic Status Conference (Ex. E) at 49:4-50:5. Again, *the U.S. did not mention the issue of standing*. *See generally id.*

At the November 13, 2019 telephonic status conference, although again not raised by the U.S., the Court queried why it was not the State of New Mexico, instead of the Environment Department, making the claim for certain damages. *See* Tr. of Nov. 13, 2019 Telephonic Hrg. & Status Conference (Ex. F at 50:2-7). Counsel explained that the Environment Department was entitled to sue for the damages flowing from the environmental remediation and restoration. *See id.* at 50:8-12. The State of New Mexico suffered separate economic damages for which it is suing.

It was not until the June 26, 2020 telephonic hearing and status conference that the U.S. finally turned its focus to standing. *See* Tr. of June 26, 2020 Telephonic Hrg. & Status Conference (Ex. C at 11:18-22). But, as the undersigned counsel explained, the parties were only addressing a separate discovery dispute, not standing. *See id.* at 15:8-17. Nonetheless, Plaintiffs' counsel expressly stated that "***[t]he State of New Mexico is the plaintiff as well as the Environment Department***." *Id.* at 15:22-23 (emphasis added). Counsel then explained the above-discussed "duality" of the State's executive branch and how it affected the separate discovery issue, which is an entirely distinct issue from standing. *See id.* at 16:3-18:4.

The U.S. continues to ignore that there are ***two*** Plaintiffs here: the State ***and*** the Environment Department. The State is ***not*** a nominal party as the U.S. argues. *See* U.S. Mot. to Dismiss at 9-10.[11] Despite the U.S.'s posturing, the fact remains that the Attorney General is the only entity authorized by New Mexico statute to bring suit on behalf of the state as a whole. *See* N.M. STAT. ANN. § 8-5-2(B) ("[T]he attorney general shall . . . prosecute and defend in any [] court or tribunal all actions and proceedings, civil or criminal, in which the state may be a party or interested when, in his judgment, the interest of the state requires such action or when requested to do so by the governor[.]"); *id.* § 36-1-19(A) ("[N]o one shall represent the state or any county thereof in any matter in which the state or county is interested except the attorney general, his legally appointed and qualified assistants or the district attorney or his legally appointed and qualified assistants and such associate counsel as may appear on order of the court, with the consent of the attorney general or district attorney.").

---

[11] The U.S. attempts to use the fact that the state in *Amtrak* was a "nominal party" to try to explain that the state could not compel other nonparty agencies to produce documents. *See* U.S. Mot. to Dismiss at 9-10. But as the District Court for the District of Columbia recognized, *Amtrak* still "firmly supports the view that, where two government agencies are neither interrelated nor subject to common executive control, they will not be aggregated together for purposes of discovery." *Warner Chilcott Holdings Co. III, Ltd.*, 2007 WL 9813287, at *4.

Accordingly, as explained, the supposed Standing Dispute is a red herring, and Plaintiffs are entitled to protection from the U.S.'s ill-conceived discovery demands.

## IV.   THE IDENTIFIED DEPOSITION TOPICS ARE OTHERWISE SUBJECT TO MULTIPLE OBJECTIONS

In an abundance of caution, to the extent the Court declines to grant this Motion on the foregoing bases, the identified topics are otherwise objectionable.

First, Topic 1, which states outright that it seeks testimony regarding the Environment Department's "authority and duties," improperly seeks legal conclusions regarding that authority and those duties. While the Environment Department can and will testify as to the amount and nature of those costs outlined in subtopics (a) and (b)—"short-term emergency response costs" and "long term monitoring and preparedness planning"—it is inappropriate to seek any legal conclusions on its authority and duties, particularly as it relates to subtopic (c)—"recovering economic damages for economic losses in the form of reduced business activity and lost tax revenue."

Second, the topics set forth in the Notice are overbroad and hopelessly vague. Topics 2 seeks testimony regarding "the work done by the New Mexico Abandoned Mine Land Program to identify and survey abandoned mines within the State of New Mexico," without any limitation to the scope of work or the scope of abandoned mines. As previously discussed with the U.S. and the Court, there are approximately 15,000 abandoned mine features in the State.  Topic 3 seeks testimony regarding "[t]he practices, procedures, and policies of the New Mexico Abandoned Mine Land Program with respect to remediation and/or reclamation of abandoned mines in the State," without any limitation to the scope of "practices, procedures, and policies" or the number of abandoned mines. Topics 4, 5, and 6 seek testimony regarding "factors affecting" the amount of tax revenue collected, tourism, and agriculture through the entirety of the State of New Mexico,

without any limitation to the matters in this litigation. These topics are not limited to any discernible "factors," any particular industries, any time frame, or any geographic region of the State of New Mexico. They therefore are excessively overbroad and not limited to any topics relevant to the claim and defenses in this litigation as required by the Federal Rules of Civil Procedure. For example, factors affecting tourism in Santa Fe will be significantly different from those affecting Farmington, and are entirely inapplicable to New Mexico's claims or damages in this litigation.

Similarly, Topics 7 and 8 are amazingly overbroad, as they seek information related to "any assessment" by eight specified agencies or entities—including three state universities—"or any other New Mexico state agency or entity" related to the effect of the Blowout or other releases from the Gold King Mine or Sunnyside Mine Pool on the environment. It would be virtually impossible to properly prepare one, two, or even a handful of witnesses on these two topics without requiring them to interview all agencies and departments—of which there are over one hundred. Moreover, the inclusion of three non-party state universities in these topics render them hopelessly overbroad, as those universities together employ thousands of professors, in addition to myriad graduate students, doctoral candidates, and others who feasibly could be read into the overbroad topics.

Third, Topics 4, 5, and 6 seek premature disclosure of expert work product to the extent they seek information regarding the State's damages model in this litigation, which will be produced in accordance with the Court's scheduling order. The U.S. will have the opportunity after such disclosure to depose the State's expert witness(es). For all the foregoing reasons, in addition to the reasons set forth above, these topics are overbroad, vague, and wholly improper.

## V.     CONCLUSION

WHEREFORE, the State of New Mexico and the Environment Department respectfully request that the Court grant this Motion for Protective Order and enter the proposed Protective Order protecting New Mexico from the U.S.'s requests to produce documents and from presenting a designated representative on Topics 1(c), 2, 3, 4, 5, 6, 7, and 8 from independent, nonparty agencies. Alternatively, the State of New Mexico and Environment Department respectfully request that the Court grant this Motion for Protective Order and sustain the objections presented as to the identified topics. Finally, Plaintiffs respectfully request any such other relief that the Court deems just and proper.

Dated: October 26, 2020                     Respectfully submitted,

*/s/ John D.S. Gilmour*
John D.S. Gilmour
NM Fed. Bar No. 16-101
William J. Jackson
N.M. Fed. Bar No. 16-102
Lana M. Rowenko
Andrew Homer
KELLEY DRYE & WARREN LLP
515 Post Oak Blvd., Suite 900
Houston, TX 77027

Hector Balderas
Attorney General of New Mexico
P. Cholla Khoury
Assistant Attorney General
408 Galisteo Street
Villagra Building
Santa Fe, NM 87501

Marcus J. Rael, Jr.
ROBLES, RAEL & ANAYA, P.C.
500 Marquette Ave NW, Suite 700
Albuquerque, NM 87102

***Attorneys for Plaintiff the State of New Mexico on behalf of the New Mexico Environment Department***

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2020, the foregoing document was filed with the Court through the CM/ECF system and a copy thereof was served via the CM/ECF upon all counsel of record.

_/s/ John D.S. Gilmour_
John D.S. Gilmour