# Exhibit F

MULTI-DISTRICT LITIGATION

IN RE:  GOLD KING MINE RELEASE IN SAN
JUAN COUNTY, COLORADO, ON AUGUST 5,
2015.

NO:  1:18-MD-02824-WJ

TELEPHONIC HEARING AND STATUS CONFERENCE PURSUANT TO
RULE 16(c)(2)(F) and (L)
November 13, 2019
12:00 p.m.
421 Gold, Southwest
Albuquerque, New Mexico

BEFORE:   HONORABLE ALAN C. TORGERSON, SPECIAL MASTER

REPORTED BY: Mary Abernathy Seal, RDR, CRR, NM CCR 69
Bean & Associates, Inc.
Professional Court Reporting Service
201 Third Street, Northwest, Suite 1630
Albuquerque, New Mexico 87102

(3090N) MAS

Page 50

1   orange river.
2       SPECIAL MASTER TORGERSON:  Let me stop
3   you.  Let me stop you.  Because I understand all
4   that and I understand why somebody ought to be able
5   to make a claim for these damages.  But why isn't it
6   the State of New Mexico, rather than the State of
7   New Mexico Environmental Department?
8       MR. GILMOUR:  Because it was an
9   environmental disaster, the agency is the one
10  identified by the State to be in charge of
11  remediation, restoration, and any and all damages
12  that flow from that.  If you look at the enabling
13  statute that the United States cited, the very first
14  part says, "The department shall have the power to,
15  A, sue and be sued."
16      SPECIAL MASTER TORGERSON:  Yes.
17      MR. GILMOUR:  And the final statement
18  there is in subsection I which says, "Have such
19  other powers as may be necessary and appropriate to
20  the exercise of the powers and duties delegated to
21  the department."  And this has been put within the
22  purview of the department.
23      SPECIAL MASTER TORGERSON:  Okay.  Well,
24  I'm probably getting into an area that's way above
25  my pay grade, but I don't quite understand it.  And

Page 51

1   then it gets more complicated when you say, "Well,
2   even though we're making all these claims on behalf
3   of all these other departments, we don't have to
4   produce any documents because they're not in our
5   custody and control or possession."  So you can't
6   have it both ways.  If you're acting on behalf of
7   these other agencies, you're acting on behalf of
8   these other agencies in the state.  I just think
9   it's a double standard.
10      MR. GILMOUR:  Your Honor, if I might
11  respond, we are not saying that we are not producing
12  these documents.  In fact, as I stated previously on
13  the October 31st conference that we had, this is
14  extremely premature by the United States, and I have
15  no idea why they have raised this issue.  We have
16  told them, and it's even in the letter confirming
17  our meet and confer, that we will produce all of
18  this information to the extent that we have it.  And
19  to the extent that we don't, we are willing to go to
20  the agencies and try and collect it from them.  But
21  the United States' position has been that we can
22  somehow compel those agencies to produce the
23  information if they refuse.
24      SPECIAL MASTER TORGERSON:  So stop, stop,
25  stop, stop, stop.  Don't go too far.  You're going

Page 52

1   to tax my now 74-year-old mind.
2       MR. GILMOUR:  Yes, Your Honor.
3       SPECIAL MASTER TORGERSON:  I still don't
4   see the -- I see the connection, but I don't see --
5   so you're saying, well, "We'll give you what we have
6   and we'll ask these other agencies that we can't
7   force to do anything to give us documents.  And if
8   they say they will, we'll do that pursuant to a
9   memorandum of understanding."
10      But what if somebody says, "No, we're not
11  going to give you the documents"?  Or what if the
12  Federal Defendants say, "We're not satisfied with
13  that response"?  Then what do they do?
14      MR. GILMOUR:  Then, Your Honor -- and I
15  don't think we would get to that point.  But
16  assuming for purposes of discussion that that
17  happens, then they would be perfectly entitled to
18  serve a subpoena upon that agency.
19      SPECIAL MASTER TORGERSON:  Okay.  Well,
20  that would be my solution, but it seemed to be
21  unnecessary if we can get cooperation.  All right.
22  Let's try to get beyond that.  And let's talk about
23  the scope of these requests.  And let's set aside
24  for a moment whether I agree or disagree with you
25  about whether these kinds of requests, which are

Page 53

1   really asking about information with respect to your
2   claim for damages, are premature because I have my
3   own thoughts about that.  But let's assume for
4   purposes of this discussion that these requests are
5   not premature.  What is it that you think you can
6   produce or are willing to produce in response to
7   these requests?  And what is it about the requests
8   that -- I agree they're broad, but is there some way
9   that we can agree in some manner, at some point, how
10  these documents are going to be produced?  Have you
11  thought about that?
12      MR. GILMOUR:  Yes, I have, Your Honor, and
13  I think that as an initial starting point, I agree
14  that they are entitled to information on our
15  damages, and in these areas that they have
16  identified, such as taxation and tourism, we are
17  willing to produce those and are in the process of
18  doing that.  I think that asking for the past 15
19  years' worth of data is excessive and unduly
20  burdensome.  I think an appropriate baseline would
21  be for the five years prior to the release, and we
22  are willing -- and in the process of getting that
23  information, which with the information going
24  forward beyond the 2015 release, by the time we get
25  into discovery next year, that will give them five

Page 114

1    UNITED STATES OF AMERICA
2    STATE OF NEW MEXICO
3
4           REPORTER'S CERTIFICATE
5       I, Mary Abernathy Seal, RDR, CRR, CCR, do
6    hereby certify that the foregoing pages constitute a
7    true transcript of proceedings had before the said
8    Court held in the City of Albuquerque, New Mexico,
9    in the matter therein stated.
10      In testimony whereof, I have hereunto set my
11   hand on this 15th day of November, 2019.
12
13   _____
14        Mary Abernathy Seal, RDR, CRR, CCR
          BEAN & ASSOCIATES, INC.
15        NM Certified Court Reporter #69
          License expires:  12/31/19
16
17
     Date taken:  November 13, 2019
18
19
20
21
22
23
24
25