UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

IN RE: GOLD KING MINE RELEASE IN SAN
JUAN COUNTY, COLORADO, ON AUGUST 5,
2015

*This Document Relates to:*
 C.A. No. 1:16-cv-00465-WJ-LF
 Consolidated with 16-cv-00931

C.A. No. 1:18-md-02824-WJ

**PLAINTIFFS THE STATE OF NEW MEXICO AND
THE NEW MEXICO ENVIRONMENT DEPARTMENT'S
<u>REPLY IN SUPPORT OF THEIR MOTION FOR PROTECTIVE ORDER</u>**

Plaintiffs, the State of New Mexico and the New Mexico Environment Department, hereby file their Reply in Support of Their Motion for Protective Order (ECF No. 884) ("Motion") and would respectfully show the Court as follows:

**I.   INTRODUCTION**

Instead of responding to Plaintiffs' legitimate and detailed legal arguments regarding New Mexico's "dual executive" (or "divided executive") structure of government and why that structure prevents the Attorney General for the State of New Mexico from compelling independent, nonparty governmental agencies to produce documents or witnesses, the U.S. spends almost the entirety of its Response rehashing its version of the "facts" and discussing its manufactured standing dispute to argue that the State and the Environment Department are somehow not being candid with this Court.[1] The result is the U.S.'s singular argument that it is ***not*** asking for a witness or witnesses from the nonparty agencies listed in its deposition notice; rather, all it wants is for the Plaintiffs to produce ***any*** witness to testify regarding the noticed topics regardless of whether such

---

[1] Plaintiffs address the "standing dispute" in their Response to the U.S.'s Motion to Dismiss Tort Claims due to Lack of Standing. *See* ECF No. 897.

witness has knowledge of the topics. The U.S. does not address who can testify about ***information known or reasonably available*** to the Plaintiffs—the Office of the Attorney General (OAG) and the Environment Department. The U.S.'s new position is a distinction without a difference from that identified in the Plaintiffs' Motion, as the witnesses in the OAG and the Environment Department do not have knowledge regarding the requested topics, nor is such information reasonably available to them.[2]

Unfortunately, to the U.S., it does not matter if the witness has zero knowledge regarding the topics listed in its notice. According to the U.S., if the witness the Plaintiffs designate does not know the answers to the U.S.'s questions (because the information is not within Plaintiffs' knowledge or reasonably available to Plaintiffs), then Plaintiffs will be unable to prove their damages at trial. Of course, this is simply untrue because damages may be proved with evidence and data—evidence and data that Plaintiffs have *already* provided to the U.S., *see, e.g.*, Motion, at 5 & n.4, and will continue to provide to the U.S. if such requested information comes within the

---

[2] The U.S. disingenuously states that the Plaintiffs "refuses [sic] to produce a representative to testify on its behalf to support its allegations of negligence, alleged damages, and allegations of environmental harm."  U.S.'s Resp. in Opposition (ECF No. 901) (hereinafter "Resp.") at 16. This statement is patently false. In fact, the U.S. has not requested any witnesses on such topics. *See* Motion, at Ex. A. Rather, the U.S. has requested that the OAG or the Environment Department produce a witness to testify regarding entirely different topics, e.g., "Any assessment that the New Mexico Department of Taxation and Revenue has conducted on the factors affecting the amount of tax revenue collected by the State of New Mexico from 2010 to present." *Id*., at 9, Topic 4. Neither the OAG nor the Environment Department has knowledge of "any assessment" (which means all assessments) by the "New Mexico Department of Taxation and Revenue" (not a party to the litigation) on "the factors affecting the amount of tax revenue" collected since 2010. Moreover, that information is not reasonably available to Plaintiffs.  However, it is available to the Department of Taxation and Revenue, the non-party the U.S. refuses to subpoena or send an IPRA request. If the U.S. actually wants this information, why will it not go out and get it according to the applicable law? Instead, it argues that Plaintiffs must educate a witness. However, a party can only educate a witness to the extent that it has the relevant information and the U.S. acknowledges this limitation. *See* Resp. at 12. That is not the case here as the amount of Plaintiffs' tax losses are the subject of expert work based upon data from the Department of Taxation and Revenue that has already been produced to the U.S. in this litigation. Plaintiffs have advised the U.S. repeatedly that such expert work will be forthcoming pursuant to the applicable scheduling Order issued by the Court. The U.S. refuses to adhere to the Court's mandated schedule.

possession, custody, or control of the Plaintiffs, as well as expert testimony (the real subject of the U.S.'s notice). *See*, *e.g.*, *id*., at 20.

The U.S.'s codefendants in this case have directly and properly subpoenaed or submitted Inspection of Public Records Act (IPRA) requests to nonparty agencies from which they have sought documents and witnesses. As Plaintiffs understand, each agency has complied with those subpoenas and requests and have willingly turned over the information requested, and Plaintiffs adopted those productions in this litigation. The U.S. refuses to do the same and seeks documents and witnesses that Plaintiffs are unable to provide, all to waste this Court's and Plaintiffs' time and resources. The U.S.'s request for *any* witness, whether he or she can answer questions on the noticed topics or not, itself proves that the U.S. is not acting in good faith because it admittedly does not care if it gets anything out of the deposition. If the U.S. wants knowledgeable answers and relevant documents not within the possession, custody, or control of the Plaintiffs, it should subpoena the independent, nonparty agencies directly. Instead, the U.S. continues down the path of harassment and gamesmanship to try to bolster its manufactured "gotcha" standing argument.[3] *See* U.S.'s Mot. To Dismiss for Lack of Standing (ECF No. 876). The Court should not countenance such conduct and, accordingly, Plaintiffs respectfully request that the Court grant their Motion for Protective Order.

**II.     ARGUMENT**

    **A.     The U.S. Ignores the "Divided Executive" Structure of the State of New Mexico and Plaintiffs' Inability to Compel Discovery from Independent, Nonparty Agencies and Tries to Superimpose the U.S.'s Unitary Form of Government**

---

[3] Indeed, the U.S. even makes the absurd statement (without citation) that the Plaintiffs assert that "the State is obviously **not** a plaintiff." Resp. at 6 (emphasis in original). However, the Plaintiffs never make such assertion in their Motion or anywhere else. Rather, Plaintiffs note the source of the dispute is the U.S.'s purported confusion regarding the identity of the Plaintiffs and the proper remedy for such confusion should have been a Rule 12(e) motion for more definite statement that the U.S. never pursued. *See* Motion at 15 & n.9.

In the Motion , Plaintiffs spend significant time and pages detailing the "divided executive" structure of the State of New Mexico's government, as distinct from the U.S.'s unitary form of government, and how that structure prohibits Plaintiffs from requiring nonparty agencies to respond to document requests or to provide witnesses for deposition (including Rule 30(b)(6) depositions) from nonparty agencies. *See* Motion at 5-13. Plaintiffs' representations regarding their inability to compel discovery from nonparty agencies are compelled by law and the New Mexico Constitution, and there is absolutely nothing Plaintiffs can do to compel party discovery responses, such as Rule 30(b)(6) deposition notices, from nonparties. To the extent the U.S. wants such discovery, beyond that which has already been voluntarily produced in this litigation or produced in response to IPRA requests served by other defendants, it must serve a subpoena on those nonparty agencies. *See id*.

Despite the applicable law, the U.S. fails to take on the "divided executive" argument directly, because it does not have a compelling response. The U.S. provides only one paragraph (merely 12 lines) in response to Plaintiffs' entire "divided executive" discussion, claiming simply that those cases "are irrelevant to [Plaintiffs'] obligations to respond to the Rule 30(b)(6) notice." Resp. at 15-16. In other words, the U.S. could not care less that New Mexico is a sovereign state and that its state Constitution does not follow the unitary form of government that the U.S. has adopted pursuant to the federal Constitution. However, the U.S. does not have the ability to dictate New Mexico's sovereignty or the terms of its Constitution related to state government.

Factually, the U.S. argues that it did not discover the "standing" issue until after discovery opened in August 2019 and that the "standing problem faced by the New Mexico Plaintiff for bringing a complaint only 'on behalf of NMED,' while asserting damages on behalf of the entire State, began to crystallize for the New Mexico Plaintiff only in 2019." *Id.* at 7 (citation omitted).

To be clear, there has be no "crystallization" of any "standing problem" because no such problem exists. Indeed, as early as July 2018, *the U.S.* plainly acknowledged in this litigation that the State is a party and, in fact, expressly moved to dismiss the "Amended Complaint[] of the State of New Mexico." U.S.'s Mot. to Dismiss & Incorporated Mem. in Support Thereof (ECF No. 44) at 1. And Judge Johnson expressly recognized that *the State of New Mexico* had the right to bring its tort claims against the U.S. *See* Mem. & Order (ECF No. 164) at 10 ("The Court denies the motion to dismiss the tort claims against the Federal Defendants[.]"). Moreover, the U.S. admits that it manufactured the standing argument after reviewing a complaint in unrelated litigation but involving some of the same parties. *See* Motion at 2-3, 14-17. The U.S.'s contention that its "discovery" of this purported standing issue is based on any developments in this case is simply not true.

As previously detailed in Plaintiffs' Motion, the U.S. conflates a discovery issue with a standing issue. While the U.S. makes much of a meet and confer session and discussions with the Special Master in the Fall of 2019 to support its purported standing issue, it fails to recount that all of those discussions focused on which *state agency* was a party to the litigation and required to respond to party discovery—*a discovery issue*. As stated repeatedly, the *only state agency* that is a party to the litigation is the Environment Department. The State itself is not an agency and the only entity empowered to bring a claim on its behalf is the OAG, which the OAG has done here. *See* N.M. STAT. ANN. 1978 §§ 8-5-2(B) & 36-1-19(A). Moreover, to the extent any information has been in the possession, custody or control of the OAG, and is not protected by privilege or similar doctrine, it has been produced or will be produced (e.g., the much-sought-after expert work that will be produced pursuant to the Court's Scheduling Order).

While the U.S. attempts to brush off several of Plaintiffs' cases as irrelevant in the body of its Response, there is one case the U.S. wants to avoid, so it tucks it into a footnote. *See* Resp. at 15 n.3. That case, *People ex rel. Lockyer v. Superior Court*, is the only case located discussing the provision of witnesses from nonparty agencies in a state that operates under a "divided executive" structure. *See* 19 Cal. Rptr. 3d 325 (Cal. Ct. App. 2004). The U.S. calls this case "inapt." The U.S.'s self-serving statement is wrong.

In *Lockyer*, the State of California, through its Attorney General, sued to enforce statutes concerning the relationships between opticians and eyeglass sellers. The eyeglass sellers sought discovery from state agencies, which the district court granted. In overturning the district court, the court of appeals ruled that the State of California, simply by virtue of prosecuting the action, **did not have possession, custody, or control over documents of any state agency**. The court held that state agencies "are distinct and separate governmental entities, third parties under the discovery statutes that can be compelled to produce documents only upon a subpoena." *Id.* at 337. The court concluded that, "to obtain documents and witnesses from state agencies, other than documents reflecting an agency's investigation related to this litigation, [the defendants were] required to serve subpoenas directly upon the agencies from which they sought this information." *Id.* at 338.

The U.S.'s sole attempt to distinguish *Lockyer* is to argue that "California civil procedure specifically requires that when an organization is a deponent, that organization must produce deponents 'who are most qualified to testify on its behalf.'" Resp. at 12 n.3 (citing CAL. CIV. PROC. CODE § 2025.230). And because Rule 30(b)(6) "has no such requirement, [] the [U.S.'s] deposition notice [here] does not ask for deponents from purportedly nonparty State agencies." *Id.* The U.S.'s argument makes no sense. First, the *Lockyer* court does not discuss the language in § 2025.230

6

when it analyzes the issue. Second, section 2025.230's requirement is substantively no different from Rule 30(b)(6)'s requirement that "the persons designated must testify *about information known or reasonably available to the organization*." FED. R. CIV. P. 30(b)(6) (emphasis added). Section 2025.230 of California's Code of Civil Procedure states in full:

> If the deponent named is not a natural person, the deposition notice shall describe with reasonable particularity the matters on which examination is requested. In that event, the deponent shall designate and produce at the deposition those of its officers, directors, managing agents, employees, or agents who are most qualified to testify on its behalf as to those matters *to the extent of any information known or reasonably available to the deponent*.

CAL. CIV. PROC. CODE § 2025.230 (emphasis added). The U.S. argues that the fact that the deponent must be the "most qualified to testify on its behalf" in *Lockyer* makes this case completely different from Rule 30(b)(6) because Rule 30(b)(6) only requires the State to designate *any* person. *See* Resp. at 12 & n.3. Besides the fact that this is not an accurate distinction between the two procedural rules, both rules still require the deponent to be an agent of that organization. Thus, to the contrary, the *Lockyer* court was addressing the exact issue as in this case and held that "public policy dictates" that a defendant serve third-party discovery directly on nonparty state agencies reasoning:

> It would be unduly burdensome if any time the People are a party to litigation they are required to search for documents from any and all state agencies that the propounding party demands. Further, requiring [the defendant] to seek documents and witnesses directly from the involved state agencies will allow those agencies to protect their particular interests, of which the People may have no knowledge, expertise or understanding. There is no burden, on the other hand, in requiring [the defendant] to serve subpoenas on the state agencies from which it wishes to obtain records.

19 Cal. Rptr. 3d at 338.

The U.S.'s argument that Plaintiffs' remaining cases are irrelevant because they concern the production of documents under Rule 34 is another distinction without a difference. The

7

ultimate rule in a "divided executive" state remains unchanged: As a party to a lawsuit, the State (represented by the OAG, as it must be) absolutely cannot compel independent, nonparty agencies to respond to party discovery. As explained fully in Plaintiffs' Motion, under the "divided executive" structure of the State of New Mexico's government, the Attorney General does not control documents in the possession, custody or control of the nonparty agencies. *See* Motion at 5-13. And "there is no burden in requiring [the U.S.] to serve subpoenas [and other discovery notices or requests] on the state agencies from which it wishes to obtain records." *Lockyer*, 19 Cal. Rptr. 3d at 338. Accordingly, the Court should grant the Plaintiffs' Motion.

### B. The U.S. Has Failed to Meet its Burden Under Applicable Law

Furthermore, as the party seeking production, the U.S. bears the burden of demonstrating that the Plaintiffs (the OAG or the Environment Department) have "control over the documents [and information] sought." *In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 236 F.R.D. 177, 180 (S.D.N.Y. 2006). The U.S. has not and cannot meet that burden. In fact, in its Response, the U.S. made no attempt to meet its burden. "[A] party is not obliged to produce, at the risk of sanctions, documents that it does not possess or cannot obtain." *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007). Similarly, here, the Plaintiffs cannot produce a witness to testify about information it does not have and cannot reasonably access and the U.S. has not demonstrated any differently.

As Plaintiffs have repeatedly argued, and as the *Lockyer* court confirms, the U.S. can use third-party subpoenas, depositions notices, and IPRA requests to compel the nonparty agencies to produce the information and witnesses it purportedly seeks. Requiring the U.S. to use those methods, as a practical matter, is in accordance with the law and Constitution of the State of New

Mexico and is more efficient than directing a Rule 30(b)(6) notice regarding various nonparty state agencies on Plaintiffs, to which Plaintiffs cannot provide relevant testimony.

The Court should grant the Plaintiffs' Motion.

### C. Plaintiffs' Remaining Objections Demonstrate Good Cause for a Protective Order

Even if the Court declines to grant the Plaintiffs' Motion and addresses the identified objections to the topics, the U.S. is incorrect and the topics are inappropriate. First, contrary to the U.S.'s assertion (Resp. at 17), Topic 1(c) is inappropriate. The U.S. selectively quotes *Quarrie* for the unremarkable proposition that objections to *questions* calling for legal conclusions should be made in depositions, while misquoting the applicable law when it comes to entire Rule 30(b)(6) deposition *topics*. The Court in *Quarrie* held that the four Rule 30(b)(6) topics at issue there did not seek legal opinions and that, even if they had, such flaws regarding those four topics did "not constitute good cause" to enter a protective order preventing the Rule 30(b)(6) deposition:

> Topics 1, 11, 12, and 22 also ***do not***, on their face, ***seek legal opinions***. As the Court reads them, ***these topics seek facts*** related to the specified proceedings. Inquiries into "facts underlying legal claims and theories" are permissible. . . . Moreover, "while objections based on attorney-client privilege or calling for a legal conclusion can certainly be raised during the Rule 30(b)(6) deposition, such objections do not constitute good cause to enter a protective order preventing a Rule 30(b)(6) deposition."

*Quarrie v. Wells*, 2020 WL 5329886, at *10 (D.N.M. Sept. 4, 2020) (emphasis added) (internal citations omitted). The *Quarrie* court never held, as suggested by the U.S., that a valid objection to a Rule 30(b)(6) deposition topic as seeking a legal conclusion is never a good cause basis for seeking protection from the topic. To the contrary, the court's distinction between topics that seek legal opinions "on their face," as opposed to those that seek facts, indicates the exact opposite: that a topic that, on its face, seeks a legal opinion is objectionable. Similarly, in *P.S. v. Farm, Inc.*, No. 07-CV-2210-JWL, 2009 WL 483236 (D. Kan. Feb. 24, 2009), cited and relied upon in *Quarrie*,

the court's denial of a protective order on the basis of such objections was specific to the one topic at issue in that motion, not a declaration of a black letter rule applicable to all notices issued pursuant to Rule 30(b)(6). *Id.* at *23 (emphasis added). In other words, a court must look at the language in the topic to determine whether it is objectionable.

Topic 1(c) does not seek "facts"; rather, on its face, Topic 1(c) absolutely seeks a legal conclusion: "The New Mexico Environment Department's authority and duties with respect to: . . . (c) recovering economic damages for economic losses in the form of reduced business activity and lost tax revenue." Resp. at 8. The scope of an agency's "authority and duties" is not a question of fact in any way, shape or form; rather, it requires legal research to arrive at an ultimate legal conclusion. To the extent the U.S. believes that the Environment Department does not have authority to seek certain damages under New Mexico law, the U.S. can research such New Mexico law on its own; its purported deposition topic is improper.[4]

Regarding topics 2 and 3, the U.S. seeks testimony on "[t]he work done by the New Mexico Abandoned Mine Land Program." *See* Motion, Ex. A, at 1. "Work done" is not defined and is incredibly overboard. Moreover, neither the OAG nor the Environment Department is privy to what the Abandoned Mine Land Program has done across the state regarding various mines. Similarly, "[t]he practices, procedures, and policies of the New Mexico Abandoned Mine Land Program with respect to remediation and/or reclamation of abandoned mines in the State of New Mexico" is extremely overbroad. Practices, procedures and policies are not limited in any way.

---

[4] Surprisingly, the U.S. states in it its Response that "the United States [does not] have a responsibility to litigate against itself by researching the law and identifying to the New Mexico Plaintiff [sic] the fact that NMED has limited authority and lacks standing to bring claims for all category [sic] of the damages sought." Resp. at 6. Contrary to the U.S.'s assertion, all parties have an ethical obligation to their client and to the Court to research and disclose all applicable law, not only law in support of their position, but also law in contravention to their position, to ensure candor to the Court. *See* Rule 3.3 of the MODEL RULES OF PROFESSIONAL CONDUCT.

Moreover, "remediation" and "reclamation" are not limited in any way. To the extent the U.S. actually wants such information, which Plaintiffs question whether it does, it should limit its scope and subpoena the New Mexico Abandoned Mine Land Program.

Contrary to the false statements of the U.S., the Plaintiffs did not refuse to discuss topics 4, 5, and 6 in the meet and confer session. Rather, the U.S. stated that it was unwilling to modify those topics, despite the Plaintiffs' objections. Only then did the Plaintiffs state that they would seek a protective order from the Court. Once again, the issue with these topics is that they seek "any assessment," which means all assessments, and those are simply not within the care, custody or control of the Plaintiffs. Moreover, the topics purport to address "the factors affecting" the identified topics. Plaintiffs are simply not in a position to know what "factors affecting" means and the U.S. has been unwilling to clarify.

Even if Plaintiffs had such knowledge, though, the U.S. had made no effort to narrow the scope of these topics to issues actually relevant to this litigation. As drafted, they seek information related to every geographic region and industry within the State of New Mexico, which far overreaches the bounds of Plaintiffs' claims in this litigation. By means of example only, factors affecting tourism (Topic 5) should be limited only to the geographic region relevant to this litigation—the Four Corners region in San Juan County. The U.S.'s topic, however, would purportedly require a witness to testify about factors affecting tourism in *every* region of New Mexico. The U.S. fails to explain how issues related to tourism in, say, Albuquerque, could possibly be relevant to this litigation. These topics are wildly overbroad and unduly burdensome and Plaintiffs cannot provide a witness or witnesses to address these topics.

For topics 7 and 8, the U.S. reveals its inability to recognize, once again, the dual executive of the State of New Mexico. While the U.S. acknowledges that the "eight specified agencies or

entities" "have publicly available studies, reports, or presentation concerning the environmental impact of the Gold King Mine release," the U.S. refuses to ask those agencies for those documents or related testimony. Resp. at 18. Instead, the U.S. wants to engage in its form over substance argument regarding purported discovery issues (notably ***not standing issues***)—neither of which exist.

## IV.     CONCLUSION

The U.S.'s entirely improper Rule 30(b)(6) notice underscores that the U.S. is attempting to manufacture legal loopholes to escape liability for an action for which the U.S. Environmental Protection Agency's own Administrators have admitted that agency's fault. Rather than "taking responsibility" for the tragic and devastating effects of the Gold King Mine Blowout and "commit[ing] to helping the people of the Four Corners Regions who rely on these rivers for their drinking water, irrigation water and recreation," as promised by Gina McCarthy, then Administrator of the United States Environmental Protection Agency at the time of the Gold King Mine Blowout,[5] the U.S. instead has continually attempted to manipulate and obfuscate the record in an effort to avoid liability for its actions. Its Response to Plaintiffs' Motion is no exception. The Court should not permit it to succeed.

WHEREFORE, Plaintiffs, the State of New Mexico and the Environment Department, respectfully request that the Court grant their Motion for Protective Order. Plaintiffs also respectfully request any such other relief that the Court deems just and proper.

---

[5] US EPA Administrator Gina McCarthy's Remarks, August 11, 2015, https://www.epa.gov/goldkingmine/epa-administrator-gina-mccarthy-8112015-remarks-gold-king-mine, last visited November 22, 2020.  Similarly, Scott Pruitt, subsequent Administrator of the U.S. EPA, stated in March 2018 about the Gold King Mine Blowout: "This agency, and more particularly the U.S. government, caused harm to citizens in Colorado, New Mexico and Utah and it had not taken steps to address that." https://www.denverpost.com/2018/03/12/gold-king-mine-disaster-claims-scott-pruitt/, last visited November 22, 2020.

Dated: November 23, 2020						Respectfully submitted,

<div style="margin-left:40%">

*/s/ John D.S. Gilmour*
John D.S. Gilmour
NM Fed. Bar No. 16-101
William J. Jackson
N.M. Fed. Bar No. 16-102
Lana M. Rowenko
Andrew Homer
KELLEY DRYE & WARREN LLP
515 Post Oak Blvd., Suite 900
Houston, TX 77027

Hector Balderas
Attorney General of New Mexico
P. Cholla Khoury
Assistant Attorney General
408 Galisteo Street
Villagra Building
Santa Fe, NM 87501

Marcus J. Rael, Jr.
ROBLES, RAEL & ANAYA, P.C.
500 Marquette Ave NW, Suite 700
Albuquerque, NM 87102

***Attorneys for Plaintiffs the State of New Mexico and the New Mexico Environment Department***

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2020, the foregoing document was filed with the Court through the CM/ECF system and a copy thereof was served via the CM/ECF upon all counsel of record.

>*/s/ John D.S. Gilmour*
>John D.S. Gilmour