**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

|  |  |  |
|---|---|---|
| IN RE: GOLD KING MINE RELEASE IN SAN JUAN COUNTY, COLORADO, ON AUGUST 5, 2015 | )<br>)<br>)<br>)<br>) | C.A. No. 1:18-md-02824-WJ |
| *This Document Relates to:*<br>  *No. 1:16-cv-00465-WJ-LF* | )<br>)<br>)<br>) |  |

**NEW MEXICO'S MOTION TO STRIKE AND EXCLUDE PORTIONS OF THE**
**<u>OPINIONS AND TESTIMONY OF ROBIN CANTOR, PH.D.</u>**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

SUMMARY OF DR. CANTOR'S QUALIFICATIONS AND OPINIONS................................ 2

    I.     Dr. Cantor's Retention and Qualifications............................................................ 2

    II.    Summary of Dr. Cantor's Opinions .................................................................... 3

    III.   Dr. Cantor's Supplemental Productions .............................................................. 6

ARGUMENT ....................................................................................................................... 7

    I.     Legal Standard .................................................................................................... 7

    II.    Dr. Cantor's Cherry-Picking of Confounding Factors Renders Her
           Opinions Unreliable and Misleading .................................................................. 8

    III.   Dr. Cantor's Initial Opinions Are Irrelevant, Unreliable, and Misleading .......... 14

           A.    Dr. Cantor Improperly Focuses on the Statewide, Rather Than
                 Regional, Economy.................................................................................. 14

           B.    Dr. Cantor Improperly Dismisses the Concept of Stigma, in
                 Contravention of Evidence and Economic Literature.............................. 16

    IV.   Dr. Cantor's Rebuttal to the Work of Brent McGoldrick Is Misleading and
           Will Not Be Helpful to the Jury........................................................................ 19

    V.    Dr. Cantor Cannot Testify Regarding Undisclosed or Untimely Sur-
           Rebuttal Opinions ............................................................................................ 22

CONCLUSION.................................................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Brandt v. Von Honnecke*,
   No. 1:15-cv-02785-RM-NYW, 2019 WL 12508190 (D. Colo. Jan. 16, 2019).......................20

*Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Secs.*
   *(USA) LLC*,
   752 F.3d 82 (1st Cir. 2014) ...................................................................................................10

*C.A. Assoc. v. Dow Chem. Co.*,
   918 F.2d 1485 (10th Cir. 1990) .............................................................................................8

*Cook v. Rockwell Int'l Corp.*,
   580 F. Supp. 2d 1071 (D. Colo. 2006).................................................................................22

*Daniels-Feasel v. Forest Pharms., Inc.*,
   No. 17 cv 4188-LTS-JLC, 2021 WL 4037820 (S.D.N.Y. Sept. 3, 2021)...............................9

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993)...........................................................................................................7, 13

*Dodge v. Cotter Corp.*,
   328 F.3d 1212 (10th Cir. 2003) .............................................................................................8

*Goebel v. Denver & Rio Grande W. R.R. Co.*,
   215 F.3d 1083 (10th Cir. 2000) ..........................................................................................7, 8

*Kumho Tire Co., Ltd. v. Carmichael*,
   526 U.S. 137 (1999).................................................................................................................7

*Leviton Mfg. Co. v. Nicor, Inc.*,
   245 F.R.D. 524 (D.N.M. 2007)...........................................................................................22

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices Prod. Liab. Litig.*
   *(No. II)*,
   892 F.3d 624 (4th Cir. 2018) .................................................................................................9

*Magdaleno v. Burlington N. R.R.*,
   5 F. Supp. 2d 899 (D. Colo. 1998).......................................................................................17

*Magoffe v. JLG Indus., Inc.*,
   No. CIV 06-0973 MCA/ACT, 2008 WL 2967653 (D.N.M. May 7, 2008)..........................14

*Nilssen v. Motorola, Inc.*,
  No. 93 C 6333, 1998 WL 513090 (N.D. Ill. Aug. 14, 1998) ................................................17

*Reed Constr. Data Inc. v. McGraw-Hill Cos.*,
  49 F. Supp. 3d 385 (S.D.N.Y. 2014) ......................................................................................9

*Truck Ins. Exch. v. MagneTek, Inc.*,
  360 F.3d 1206 (10th Cir. 2004) ............................................................................................17

*TYR Sport, Inc. v. Warnaco Swimwear, Inc.*,
  709 F. Supp. 2d 821 (C.D. Cal. 2010) ..........................................................................12, 13

*United States v. Nacchio*,
  555 F.3d 1234 (10th Cir. 2009) .........................................................................................7, 8

*Walker v. Spina*,
  359 F. Supp. 3d 1054 (D.N.M. 2019) .............................................................................8, 17

## Other Authorities

Fed. R. Civ. P. 26(a)(2)(B) ..................................................................................................20, 22

Fed. R. Civ. P. 26(a)(2)(D) ..................................................................................................20, 22

Fed. R. Civ. P. 26(a)(2)(E) ........................................................................................................22

Fed. R. Civ. P. 26(e) ..................................................................................................................22

Fed. R. Evid. 103(d) ....................................................................................................................7

Fed. R. Evid. 403 ................................................................................................................*passim*

Fed. R. Evid. 702 ................................................................................................................*passim*

Gregory D. Adams & Robin Cantor, *Risk, Stigma & Property Value—What Are
  People Afraid Of?, in* Risk, Media and Stigma 175 (James Flynn, Paul
  Slovic, & Howard Kunreuther eds., 2001) ...........................................................................18

Pursuant to Federal Rules of Evidence 403 and 702, Plaintiffs the State of New Mexico and New Mexico Environment Department (together, "New Mexico") respectfully move this Court for an order striking and excluding the expert opinions and testimony of Robin Cantor, Ph.D related to New Mexico's damages and respectfully show the Court as follows:

## INTRODUCTION

This Court serves the vital role of a "gatekeeper" to exclude unreliable or irrelevant expert testimony. Defendants[1] have retained one expert, Dr. Robin Cantor ("Cantor"), to rebut New Mexico's economic damages in this matter. Dr. Cantor's opinions, however, suffer from multiple fatal flaws that necessitate their exclusion and, on the whole, exemplify willful ignorance of the actual facts and economic reality in San Juan County, New Mexico since the U.S. Environmental Protection Agency and its contractors released millions of gallons of contaminated water from the Gold King Mine into the waters of the State of New Mexico on August 5, 2015 (the "Blowout").

*First*, Dr. Cantor's outcome-determinative economic analysis is unreliable and misleading. Dr. Cantor attempts to wholly invalidate any claim of economic impact to San Juan County from the Blowout by cherry-picking confounding factors that are not grounded in the realities of the County. The result is a misleading analysis that, if anything, may show correlation without causation.

---

[1] As used herein, "Defendants" collectively refers to the Federal Parties; Environmental Restoration, LLC ("ER"); and Weston Solutions, Inc., and "Contractor Defendants" refers to ER and Weston together. Dr. Cantor was jointly retained by the Federal Parties and the Contractor Defendants; however, New Mexico's claims against the Federal Parties are stayed in light of settlement between those parties. Pursuant to D.N.M.LR-Civ. 7.1(a), New Mexico determined that ER and Weston will oppose this motion.

*Second*, Dr. Cantor's methodology improperly seeks to minimize the importance and impact of the Blowout by focusing attention away from San Juan County and onto the State as a whole. In addition, Dr. Cantor's myopic view of the lasting stigma impact of the Blowout contradicts not only the on-the-ground facts developed during discovery in this litigation, but contradicts Dr. Cantor's own prior publications.

*Third*, Dr. Cantor's critique of New Mexico's media expert's analysis for failing to opine on the economic consequences of his findings is improper rebuttal testimony, irrelevant, and unhelpful to the factfinder; rather, Dr. Cantor's opinion on this analysis is simply a last-ditch effort to rebut expert findings that Dr. Cantor is unqualified to critique.

*Fourth*, through the guise of "supplemental production," Dr. Cantor has attempted to add multiple untimely sur-rebuttal opinions without leave of Court. This production does not seek to correct any prior opinions she expressed in either of her expert reports or at her deposition. The Federal Rules and this Court's Scheduling Order expressly limit the disclosure of expert opinions to prevent the sort of unending rebuttals that Dr. Cantor's supplemental productions epitomize.

For the reasons stated herein, Dr. Cantor's expert opinions and testimony should be stricken and excluded.

## SUMMARY OF DR. CANTOR'S QUALIFICATIONS AND OPINIONS

### I.     Dr. Cantor's Retention and Qualifications

Dr. Robin Cantor is an economist and a managing director of Berkeley Research Group ("BRG"), located in Washington, D.C. Ex. A, Attach. 1. In or around April 2019, the Federal Defendants retained Dr. Cantor to provide opinions on, inter alia, the economic damages that New Mexico seeks in this litigation due to the catastrophic release of millions of gallons of acid

mine drainage from the Gold King Mine on August 5, 2015. Ex. A ¶¶ 11-12; Dkt. 1441-10 at 2-3.[2] In May 2020, the Contractor Defendants joined in the retention of Dr. Cantor and BRG. Dkt. 1441-11 at 2.

## II.     Summary of Dr. Cantor's Opinions

Dr. Cantor submitted two expert reports in this case: an Initial Report submitted on July 7, 2021 and amended on September 3, 2021 (Ex. A) and a Rebuttal Report submitted on September 10, 2021 (Ex. B). Dr. Cantor was deposed on November 8 and 9, 2022. Excerpts of her deposition transcript are attached as Exhibit C.

In her Initial Report, Dr. Cantor formed five primary opinions related to the economic damages sought by New Mexico:

- Initial Opinion 1. Dr. Cantor finds that "fiscal losses being claimed by Sovereign Plaintiffs as damages caused by the GKM event are vague and inadequately explained in economically meaningful terms." Ex. A at 4, ¶ 16. Without the benefit of seeing New Mexico's damages expert's report due to simultaneous exchange of reports, Dr. Cantor concludes that "economic data and information on [New Mexico's] fiscal accounts before and after the GKM event . . . do[] not explicitly address any reduced tax revenues from lost economic activity in the industries that New Mexico asserts were impacted by the GKM event." *Id.* She further states: "Contemporaneous regional economic assessments prepared by New Mexico's own economists do not specifically mention the GKM event." *Id.*

---

[2] Dr. Cantor's scope of work also includes providing opinions related to damages sought by the Navajo Nation and the *Allen* Plaintiffs, which are not the subject of this Motion. Ex. A ¶ 11; Ex. B ¶ 5.

Dr. Cantor reaches the conclusion that "New Mexico has not proffered sufficient documentation, analysis, or calculations to determine the reliability of its damage claims." *Id.*

- Initial Opinion 2. Dr. Cantor opines that the damage function approach ("DFA") is the proper measurement of economic damages. Ex. A at 4-5, ¶ 16. She goes on to conclude that, because the Blowout was nearly six years ago (as of the time of her initial report), "due to the availability and effect of substitute resources to sustain economic performance even when labor or natural resources are directly impaired by the event," "only negligible financial effects are caused to regional economies" from "short-term adverse events." *Id.* Dr. Cantor finds "no substantial economic evidence of an incremental regional decline due to the GKM event in recorded activity for the recreation, tourism, and agriculture industries which Sovereign Plaintiffs agree are those most likely to show any direct or indirect impact." *Id.*

- Initial Opinion 3. Dr. Cantor finds "insufficient economic support for Sovereign Plaintiffs' economic losses" due to the Blowout, and "no appreciable fiscal losses to New Mexico." Ex. A at 5, ¶ 16.

- Initial Opinion 4. Dr. Cantor concludes that "other economic and fiscal declines, most notably related to the mining, oil, and gas industries, have occurred over a time period which overlaps substantially with the GKM event." Ex. A at 5-6, ¶ 16.

- <u>Initial Opinion 5</u>. Dr. Cantor opines that the record "fails to support large fiscal losses due to stigma impacts caused by the GKM event." Ex. A at 6, ¶ 16. Citing to purported "regional substitutes for water resources," a "limited period of elevated risk," and "expected decay in stigma . . . with confirmation from an authoritative source that the resources are safe for use," purportedly "no readily observable indirect stigma effect" on tourism, and "factors unrelated to the GKM event," Dr. Cantor simply concludes that "isolating the incremental effects on agriculture from stigma caused by the GKM event would be necessary to support reliable conclusions about its significance." *Id.*

In her Initial Report, Dr. Cantor critiques the concept of economic or fiscal damages incurred by New Mexico, analyzing only three sectors of the economy (tourism, recreation, and agriculture) and focusing primarily on the State as a whole. *See, e.g.*, Ex. A ¶¶ 133-152.

Dr. Cantor subsequently submitted a Rebuttal Report, which serves as the Defendants' sole rebuttal to New Mexico's economic damages expert, Dr. Charles Cicchetti, as well as the sole rebuttal to New Mexico's expert Brent McGoldrick, who presented a media and survey analysis of the Blowout. Dr. Cantor reaches two opinions related to New Mexico's experts:

- <u>Rebuttal Opinion 1</u>. Dr. Cantor opines that "Dr. Cicchetti provided no reliable economic evidence for the proposition that New Mexico has suffered economic losses due to the GKM event." Ex. B at 4, ¶ 9 (Opinion 1). Dr. Cantor critiques Dr. Cicchetti for allegedly including confounding factors in his analysis and purports to "control" for confounding factors to negate the economic effects that he finds through the use of regression analyses. *Id.* at 5, ¶ 9; *see also id.* ¶¶ 19-23.

- Rebuttal Opinion 2. Dr. Cantor opines that Dr. Cicchetti's analysis "is not salvaged by Mr. McGoldrick's social media analysis and public opinion survey." Ex. B. at 5, ¶ 9 (Opinion 2). Dr. Cantor states that Mr. McGoldrick's analysis "provided evidence of a limited and episodic pattern of social media attention" but not "actual economic losses caused by the social media attention" to the Blowout. *Id.* She concludes that there is "no empirical economic evidence of impact" from the social media volume regarding the Blowout in the three subject industries to which she confines her analysis. *Id.*

## III.   Dr. Cantor's Supplemental Productions

Subsequent to submission of the two reports permitted by the Court's Scheduling Orders (Dkts. 1193, 1318), Dr. Cantor also produced two additional analyses, produced as "supplemental productions" rather than supplemental expert reports. The first analysis was produced on November 3, 2019—nearly two months after submission of rebuttal expert reports and less than a week before her deposition—and was amended the last business day before her deposition. Ex. D ("[T]he Federal Parties produce a supplemental document reflecting analysis by Robin Cantor, PhD, performed since receiving rebuttal reports."); Ex. E (amending the production). A month *after* her deposition concluded, and after the deposition of New Mexico's damages expert Dr. Cicchetti, Dr. Cantor produced yet another supplemental analysis. Ex. F ("[T]he Federal Parties produce supplemental documents reflecting analysis by Robin Cantor, Ph.D, performed following her deposition on November 8-9, 2021.").

6

## ARGUMENT

### I.    Legal Standard

The Federal Rules of Evidence require the Court, to the extent practicable, to "conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means." FED. R. EVID. 103(d). Admission of expert witness testimony is further governed by Rule 702 and its interpretation in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Daubert*'s progeny. Rule 702 provides that a witness "qualified as an expert by knowledge, skill, experience, training, or education" may provide opinion testimony if

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702; *see also United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

The Court serves in the important "gatekeeping" role in determining whether any type of expert testimony is admissible, requiring the Court to undertake a two-step analysis: "assess the reasoning and methodology underlying the expert's opinion, and determine whether it is scientifically valid and applicable to a particular set of facts." *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).

In making its reliability determination, the Court may consider the *Daubert* factors, including (1) whether the opinion at issue is susceptible to testing and has been subjected to such testing, (2) whether the opinion has been subjected to peer review, (3) whether there is a known

or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation, and (4) whether the theory has been accepted in the scientific community. *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003). This list of factors, however, is nonexclusive. *Id.* Any step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible. *Id.* While the Court's gatekeeping function is "ultimately a flexible determination," and the Court "need not 'recite the *Daubert* standard as though it were some magical incantation,'" the Court "must adequately demonstrate by specific findings on the record that it has performed its duty as gatekeeper." *Goebel*, 215 F.3d at 1088.

Further, even if expert testimony meets the requirements of Rule 702, it may be excluded under Rule 403 if its probative value is outweighed by the danger of unfair prejudice or confusion. *C.A. Assoc. v. Dow Chem. Co.*, 918 F.2d 1485, 1489 (10th Cir. 1990).

The Contractor Defendants, as the proponents of the expert testimony challenged herein, bear the burden of demonstrating by a preponderance of the evidence that Dr. Cantor's expected testimony is admissible. *Nacchio*, 555 F.3d at 1241; *Walker v. Spina*, 359 F. Supp. 3d 1054 (D.N.M. 2019).

## II.   Dr. Cantor's Cherry-Picking of Confounding Factors Renders Her Opinions Unreliable and Misleading

Dr. Cantor's regression analyses in her Initial and Rebuttal Reports are tainted by her cherry-picking of confounding factors to achieve Defendants' desired result of finding no economic effects from the Blowout. Dr. Cantor assigns significant weight to purported confounding factors without factual basis for selecting those factors, leading to unreliable

opinions not based on sufficient facts or data. As a result, her opinions should be excluded in their entirety.

"[T]o be admissible, a regression analysis must examine an appropriate selection of data. When constructing a benchmark statistic, the regression analyst may not 'cherry-pick' the time-frame or data points so as to make her ultimate conclusion stronger." *Reed Constr. Data Inc. v. McGraw-Hill Cos.*, 49 F. Supp. 3d 385, 400 (S.D.N.Y. 2014). "Cherry-picking is a form of '[r]esult-driven analysis,' which 'undermines principles of scientific method' by 'applying methodologies (valid or otherwise) in an unreliable fashion.'" *Daniels-Feasel v. Forest Pharms., Inc.*, No. 17 cv 4188-LTS-JLC, 2021 WL 4037820, at *5 (S.D.N.Y. Sept. 3, 2021) (quoting *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices Prod. Liab. Litig. (No. II)*, 892 F.3d 624, 634 (4th Cir. 2018)). Further, "exclusion of proffered testimony is warranted where the expert fails to address evidence that is highly relevant to his or her conclusion." *Id.*

The concern with cherry-picking factors is the ability to find correlations without causal effect. For example, an analyst may be able to find a *correlation* or *association* between the return of Halley's Comet every 76 years and changes in global population, but that correlation is not necessarily indicative of *causation*; it could be a purely coincidental relationship between the dependent and independent variables.[3] Where there is a "complete disconnect" between selection of variables in a study and the facts and allegations of the case at hand, that expert testimony becomes unreliable, will not "help the trier of fact to understand the evidence or to determine a

---

[3] Dr. Cantor acknowledged this issue at her deposition: "[T]he regression approach itself will give you information about, for example, association. Whether or not you can be confident about causality may require that you do some additional testing." Ex. C at 218:11-20.

fact at issue," and must be excluded. *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Secs. (USA) LLC*, 752 F.3d 82, 91-92 (1st Cir. 2014).

Here, Dr. Cantor has concocted a regression model and corresponding opinions that purport to discredit any causal link between the Blowout and the economic decline in San Juan County following the catastrophic event. *See, e.g.*, Ex. B at ¶¶ 19-23. Dr. Cantor can only achieve this result by selectively isolating confounding factors to include in her regression analyses, without regard to those factors' relevance to the region at issue. Dr. Cantor conducts regression analyses to account for changes in New Mexico's economic performance using, among others, the confounding factors of (i) the West Texas Intermediate ("WTI") crude oil price and (ii) mining employment.[4] *Id.* Dr. Cantor's inclusion of these factors is result driven, rather than fact based, and her explanation for her inclusion of the WTI crude price and mining employment is insufficient and illogical, thereby rendering her opinion unreliable.

Dr. Cantor's first independent variable in her analysis is the WTI crude oil price, which is a global oil pricing benchmark. Dr. Cantor testified that she selected this variable as a confounding factor as "a proxy . . . to measure the ups and downs of the oil industry" to analyze the effects of the Blowout based on representations made by the State's economists in statewide publications regarding the importance of extractive industries on New Mexico's economy. Ex. C at 114:4-115:1, 221:10-222:7, 231:25-232:10. But Dr. Cantor had no understanding of the particulars of the oil and gas industry in San Juan County itself. *Id.* at 231:3-21. She had not

---

[4] In her Initial Report, Dr. Cantor also includes a confounding factor of e-commerce activity. However, Dr. Cantor acknowledges that e-commerce "wasn't statistically significant and didn't really matter if it was in the model or not." Ex. C at 224:3-12. In her Rebuttal Report, Dr. Cantor also analyzes seasonality. *Id.* at 176:24-177:15.

evaluated oil production or included actual San Juan County oil production in her analysis. *Id.* at 238:2-239:17.

San Juan County is predominantly a natural gas basin. Ex. A ¶ 166 ("Measuring 7,500 square miles, the San Juan Basin is one of North America's largest natural gas fields."). Dr. Cantor even acknowledged that "San Juan County was the top producing county of natural gas" in New Mexico in 2015. Ex. C at 229:10-17. When selecting a confounding factor, therefore, a factually grounded factor to consider might have been a natural gas pricing benchmark—for example, the Henry Hub Natural Gas Spot Price. Dr. Cantor dismissed this difference in her deposition, stating "I don't think it made any different for the results" and "we would get the same results." *Id.* at 149:13-150:23. In support of this statement, Dr. Cantor only points to a chart in her expert report that overlays the WTI crude oil price with the Henry Hub natural gas price over time. *Id.* That chart, however, demonstrates that the pricing benchmarks for these two commodities do not move in tandem over the time period for which New Mexico is seeking damages (2015-2020). Ex. A at 67, Ex. 35; *see also* Ex. C at 232:11-16. And Dr. Cantor pointed to no other analysis in her report to support her conclusion that use of this factor would get the same results. Therefore, her unsubstantiated opinion that her selection of oil over natural gas prices was irrelevant is speculative at best.

Dr. Cantor's second primary independent variable in her analysis is mining employment. Dr. Cantor testified that she was using mining employment because "extractive industries were the important drivers of the local economy"—information she gleaned from statewide economic reports published by a State agency each fiscal year. Ex. C at 151:11-152:3. But Dr. Cantor considered neither total employment in San Juan County, *id.*, nor employment in any sectors

11

other than mining, *id.* at 243:4-245:16. Nor did Dr. Cantor even know what jobs the "mining employment" variable included. *Id.* at 240:24-242:6. Rather, Dr. Cantor narrowly focused on employment in a single sector of the economy and did not analyze different industries based on the same statewide publications regarding economic activity. *Id.* at 244:8-245:2. Dr. Cantor had no factual basis tied to San Juan County for selecting this as a confounding factor or even an understanding of the independent variable she had chosen.

In short, Dr. Cantor's selection of two independent variables was untethered to the facts of this case. By picking the WTI crude price and mining employment as independent variables, Dr. Cantor ignored other more relevant options in order to fit her "outcome oriented" model in which she sought to show that the Blowout had no effect on the economy of San Juan County. To underscore the fallacy of Dr. Cantor's selection of these two independent variables for San Juan County, New Mexico's expert tested the significance of variables factually tied to San Juan County: (i) natural gas production and prices and oil production (in lieu of the WTI crude oil price), and (ii) total employment in San Juan County (in lieu of focusing only on mining employment). Ex. L at 601:9-606:10, 607:7-610:4. Dr. Cicchetti found these factors to be highly statistically significant, ultimately showing a statistical correlation between the Blowout and the economic losses in San Juan County—the opposite of Dr. Cantor's results. *Id.* Dr. Cantor's manipulation of statistical analysis, therefore, is unreliable, misleading, and unhelpful to the jury.

Tellingly, another district court criticized and excluded Dr. Cantor's opinions for the very same reason, finding her economic analysis and opinions to be "very misleading." *TYR Sport, Inc. v. Warnaco Swimwear, Inc.*, 709 F. Supp. 2d 821, 833-34 (C.D. Cal. 2010). In *TYR Sport*, Dr. Cantor provided expert opinions in an antitrust case regarding competition in the swimwear

market. Even though the motion at issue was one for summary judgment, not a *Daubert* motion, the court *sua sponte* found that "Cantor's report should be excluded under Federal Rule of Evidence 702 as unreliable and not based on sufficient facts or data." *Id.* at 834 (citing *Daubert*, 509 U.S. at 589-95).[5] The court criticized Dr. Cantor's failure to consider various contributing factors in her analysis of market impact: "By not considering any data on the pricing, sales volume, or market share of manufacturers other than Speedo and TYR, Dr. Cantor simply cannot make a reliable analysis as to market impact. The report is therefore irrelevant to the issue of market impact." *Id.* The court went on to note "the fallacy of the Cantor report" because she excludes sales of a market entrant, such that her "analysis completely fails to account for 75% of the market, at least at this retailer." *Id.* at 835 n.12. Finally, the court faulted Dr. Cantor for failing to factor out any of the challenging conduct, finding that "[n]o reasonable juror could find, based on Cantor's report, that the loss of sales identified in the report were caused by the [statements raised in Dr. Cantor's report]." *Id.* at 841.

Dr. Cantor's opinions in both her Initial and Rebuttal Reports related to New Mexico incorporate her selection of the confounding factors of the WTI crude oil price and mining employment as part of her regression methodology. Because this methodology is suffused with a lack of factual underpinning, her opinions are unreliable and should be excluded.

---

[5] When confronted with this decision at her deposition after testifying that her opinions had never been excluded, Dr. Cantor attempted to explain away this language by stating that her employer at the time had retained counsel that provided an opinion that her report had not actually been excluded. Ex. C at 77:21-78:13. That testimony was not supported by any documents produced in the litigation, and Dr. Cantor is not an attorney qualified to provide a legal opinion on the meaning of this decision. The *TYR Sport* decision speaks for itself.

III.     **Dr. Cantor's Initial Opinions Are Irrelevant, Unreliable, and Misleading**

In addition to the overarching problem of cherry-picking, Dr. Cantor's Initial Opinions suffer from further defects that render them irrelevant, unreliable, and misleading.

A.     **Dr. Cantor Improperly Focuses on the Statewide, Rather Than Regional, Economy**

In her Initial Report, Dr. Cantor evaluates the economy of New Mexico *as a whole*, rather than focusing on San Juan County—the single county directly affected by the Blowout. The overbroad analysis renders her entire report both irrelevant and misleading, because it does not focus on the area actually at issue in New Mexico's damages claims and obscures the effect on the regional economy by zooming out to the state-wide level. "When an expert's opinion is based on assumed facts that vary materially from the actual, undisputed facts, the opinion is without probative value[.]" *Magoffe v. JLG Indus., Inc.*, No. CIV 06-0973 MCA/ACT, 2008 WL 2967653, at *17 (D.N.M. May 7, 2008).

Dr. Cantor lacks even a basic understanding—no less consideration—of the economic realities of San Juan County. As Dr. Cicchetti explained in his Initial Report, the underlying economic conditions of a region before the event being studied are a significant consideration when assessing the impact of that event. Citing the work of Professor Robert Haveman and Dr. John Krutilla, Dr. Cicchetti explained that "positive and negative economic multipliers significantly increase when there are idle or unemployed resources. For example, investing in an economically depressed region will cause greater economic gains than similar investments in fully employed economically growing regions, and vice versa." Ex. G at 8. He further explained:

> The greater Farmington economy including the adjacent Navajo Nation have an
> underemployed population. The Spill significantly exacerbated depressed
> economic conditions. Northwest New Mexico and the surrounding region suffer

from the economic consequences of shuttering coal mining and electricity generating stations and falling oil and natural gas production. The overall economic injury increases due to negative synergy from these other adverse economic conditions when combined with the major environmental disaster related to the Gold King Mine Spill.

*Id.*

In the course of her work on this matter, Dr. Cantor did not visit San Juan County or any other geographic area at issue in this litigation. Ex. C at 95:4-96:3. In fact, Dr. Cantor did not recall ever visiting any of the towns in San Juan County in her lifetime. *Id.* at 96:4-17, 98:2-7, 99:1-22, 100:4-10. Not only does Dr. Cantor not have first-hand experience in the area, but she did not actually research the particulars of San Juan County's economy. In her report, Dr. Cantor notes the population of the County and some public statements by the County regarding its economy: "its economic case 'is supported not only by oil and gas, but is also being diversified by a strong growth in retail and tourism.'" Ex. A at ¶ 46. But Dr. Cantor was not even aware of the poverty rate in the County or how it compared to entire State of New Mexico. Dr. Cantor testified that she looked at the poverty rate for New Mexico as a whole, but obfuscated when directly asked whether she looked at the poverty rate of San Juan County specifically. Ex. C at 108:2-14, 109:12-110:3, 110:12-19.

This fundamental lack of understanding for the region under evaluation permeates Dr. Cantor's Initial Report. For example, Dr. Cantor opines that "there are apparently many regional substitutes for water resources impacted by the GKM event. Substitutes limit direct and indirect economic losses." Ex. A at 6. She goes on to list those apparent regional recreational substitutes in Exhibit 10 with a purported distance to Aztec or Farmington, New Mexico. *Id.* at 33. But, despite agreeing that "the scarcity of water in this area would be important," Dr. Cantor had a

15

limited understanding of the geography and climate of San Juan County. Ex. C at 101:6-102:6, 103:15-21 (agreeing "as a layperson" that San Juan County "looks to be a pretty arid place," but testifying that her familiarity with the geography involved understanding where the San Juan and Animas Rivers flow and where the irrigation canals were located). In Exhibit 10 of her Initial Report, Dr. Cantor conveniently does not list the distance to Shiprock, New Mexico, the most populous town in New Mexico located on the Navajo Nation. Ex. A at 33. Even the closest of the listed water bodies—Jackson Lake—is over 30 miles from Shiprock, and one of the purported "substitutes" that Dr. Cantor lists—Cochiti Lake—is located nearly 200 miles away from Farmington. *Id.* at ¶ 47, Ex. 10. Opining that a water body over three hours away is a potential substitute displays a basic lack of understanding of the geography and climate of the affected region. Moreover, Dr. Cantor fails to consider substitute recreational sources outside New Mexico (e.g., parks in Colorado or Arizona), despite acknowledging that a shift by consumers to those resources due to the Blowout would mean that "New Mexico wouldn't benefit from the point of view of tax revenue." Ex. C at 191:6-22.

In sum, Dr. Cantor purports to assess the economic impact of one of the most memorable events in the Four Corners region in recent history, but her entire analysis myopically disregards the reality of the economy, geography, and climate of San Juan County.

**B.      Dr. Cantor Improperly Dismisses the Concept of Stigma, in Contravention of Evidence and Economic Literature**

Dr. Cantor's Initial Report dismisses the argument that stigma impacts the economic activity in the affected region, in contravention of economic literature, including her own prior publications. "If there is a well-accepted body of learning and experience in the field, then the expert's testimony must be grounded in that learning and experience to be reliable, and the

expert must explain how her conclusion is so grounded." *Nilssen v. Motorola, Inc.*, No. 93 C 6333, 1998 WL 513090, at *11 (N.D. Ill. Aug. 14, 1998) (excluding damages expert). Courts have excluded experts' opinions when the experts depart from their own established standards or when their methodology is inconsistent with those described by authorities in the field. *Walker*, 359 F. Supp. 3d at 1072-73 (citing *Truck Ins. Exch. v. MagneTek, Inc.*, 360 F.3d 1206, 1213 (10th Cir. 2004) & *Magdaleno v. Burlington N. R.R.*, 5 F. Supp. 2d 899, 905 (D. Colo. 1998)).

In her Initial Report, Dr. Cantor summarily dismisses the impact of any stigma from the Blowout. She finds that there is "no readily observable indirect stigma effect of the GKM event on tourism in the region," and as related to agricultural products, she finds that her analysis "supports that factors not related to the GKM event were the cause of trending declines in agriculture value in San Juan County well before the GKM event." Ex. A ¶¶ 179-181. She finds that "stigma decays with cessation of the contamination and this decay is associated with confirmation from an authoritative source that the resources are safe for use." *Id.* ¶ 179. In short, Dr. Cantor dismisses the existence of a stigma in San Juan County based on the faulty assumption that such a stigma was dissipated by the cessation of risk to human health and the environment from the Spill and assurances of safety from the authorities (namely, the New Mexico Environment Department).

In doing so, Dr. Cantor willfully ignores evidence regarding the long-term stigma that has affected the region. Multiple witnesses in this litigation have testified regarding the long-lasting stigma that has plagued San Juan County, including its agricultural producers, since the Blowout. *See, e.g.*, Dkt. 1530-5 (Bonnie Hopkins Byers, the San Juan County Adult Agricultural Extension Agent for New Mexico State University, describing the stigma in San Juan County

17

five years post-Blowout); Dkt. 1530-6 (same from Dennis McQuillan, retired Chief Scientist for the New Mexico Environment Department). Dr. Cantor even acknowledged reviewing this testimony. Ex. C at 192:23-193:17. However, she did not account for this testimony in her analysis, looking only at the statewide data discussed above: "It matters to me if they stop purchasing produce to the extent that it then shows up as reduced value, market value of agriculture, which is what I look at." *Id.* at 194:17-195:1. Indeed, Dr. Cantor improperly steps into the role of factfinder and disregarded certain of this qualitative evidence because of her own undisclosed concerns with its reliability. *Id.* at 201:6-202:4.

Moreover, Dr. Cantor discounts well-established economic literature emphasizing the role that perceptions—as opposed to scientific truth—play in fostering stigma in communities. For example, in an academic publication that Dr. Cantor herself co-authored, she found:

> With real estate, like any market good, value is in the eye of the beholder—perception is reality. Therefore, if someone thinks it is dangerous to live next to a nuclear power plant, eat apples, etc., the value *to that person* of a home near a nuclear power plant, an apple, etc. will be reduced, regardless of whether any real danger exists or not. . . .
>
> Therefore, *even assuming that everyone individually is a rational scientist and correctly assess[es] true risks, stigma impacts can still occur if everyone is not certain that everyone else is also a rational scientist. . . .*
>
> Clearly, the media can [p]lay a large role in the existence, magnitude and duration of stigma impacts on property value. As we have argued above, it is not the facts regarding a risk that creates property value diminution, but rather the perception of a risk or a negative image. *Therefore, it is the media, much more than the scientists and even the truth itself, that determine whether a stigma impact will exist in a particular situation*.

Ex. J, Gregory D. Adams & Robin Cantor, *Risk, Stigma & Property Value—What Are People Afraid Of?*, *in* RISK, MEDIA AND STIGMA 175, 176-77, 183 (James Flynn, Paul Slovic, & Howard Kunreuther eds., 2001) (emphasis added).

Dr. Cantor's Initial Opinion 5 dismissing the impact of stigma on San Juan County due to the Blowout is contravened by both facts and economic literature and, therefore, should be excluded pursuant to Rule 702.

## IV.    Dr. Cantor's Rebuttal to the Work of Brent McGoldrick Is Misleading and Will Not Be Helpful to the Jury

Dr. Cantor's Rebuttal Opinion 2 related to the expert opinions of Brent McGoldrick of FTI Consulting should be excluded because it is confusing and will not be helpful to the jury. Mr. McGoldrick is an expert retained by New Mexico who conducted two analyses in this matter: the first related the extent and nature of broadcast and social media coverage of the Blowout, and the second related to a survey regarding the behaviors and opinions of the population of the Four Corners region regarding local water resources. Ex. I at 2. Dr. Cantor is the only expert retained by any defendant to express any rebuttal opinions to Mr. McGoldrick's report, and those opinions are confined to her Rebuttal Opinion 2. Ex. B ¶¶ 33-45.

Dr. Cantor's "rebuttal" to Mr. McGoldrick's media analysis does not challenge any of Mr. McGoldrick's work or findings and, therefore, is not helpful to the factfinder and should be excluded under Rules 403 and 702. As an initial matter, Dr. Cantor is not qualified to rebut the methodology or findings of Mr. McGoldrick's media analysis. While she may have experience with economic analysis, Dr. Cantor has no experience in conducting or evaluating broadcast or social media analyses. Ex. A, Attach. 1 at 1-2 (Dr. Cantor's curriculum vitae detailing her practice and prior expert reports, without reference to media analyses). Accordingly, Dr. Cantor is not qualified to challenge and cannot—and does not—challenge the actual methodology or findings of the McGoldrick media analysis.

Since she is not qualified to actually challenge Mr. McGoldrick's methodology or findings, Dr. Cantor instead confusingly attacks Mr. McGoldrick's nonexistent opinions regarding the economic impact of the Blowout. Expert rebuttal testimony must be "on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)" and "necessitate a showing supporting the opposite conclusion of those which the opposing party's expert arrived in his report." FED. R. CIV. P. 26(a)(2)(D)(ii); *Brandt v. Von Honnecke*, No. 1:15-cv-02785-RM-NYW, 2019 WL 12508190, at *1 (D. Colo. Jan. 16, 2019) (excluding expert report as improper rebuttal testimony). Dr. Cantor's sole complaint related to the media analysis is that it "did not establish an economic impact." Ex. B ¶ 35. But Mr. McGoldrick's assignment did not include any evaluation of economic impact. He readily testified that he does not conduct economic analyses of media coverage and was not tasked with conducting any such economic analysis in this case:

> Q. . . . Does the experience that you just outlined over your 25-year career include measuring the economic impact of television coverage or social media coverage of certain events or companies?
>
> A. I have never conducted an economic analysis of media coverage. What I have done and do is conduct media analysis in terms of levels of exposure to media, frequency of exposure, and survey research into the attitudes and reported behaviors of people who may be exposed to that media.
>
> Q. And so you wouldn't characterize your work in this matter as performing an economic analysis of the media coverage; is that correct?
>
> A. That is correct. ***Our work is not an economic analysis. What it is, however, is an analysis of media exposure and dollar equivalency in terms of what that level of media exposure translates to.***

Ex. K at 46:10-47:1 (emphasis added); *see also id.* at 47:15-23 (FTI did not perform an economic analysis because "we were not asked to. That was not the nature of the engagement."). Dr.

Cantor's Rebuttal Opinion 2 thus purports to find fault in Mr. McGoldrick's analysis for not expressing an opinion that was beyond the scope of his qualifications or retention. Any limited probative value of this opinion therefore is outweighed by the danger of confusion of the issues and misleading the jury. FED. R. EVID. 403.

For example, Mr. McGoldrick conducted an analysis of the amount of broadcast media coverage of the Blowout using the standard measurement of advertising value equivalent ("AVE"). AVE is "a widely used public relations industry metric, measuring approximately how much an advertiser would need to pay to receive the same quality of coverage as a non-paid (or 'earned') television appearance." Ex. I at 4. In short, AVE is a metric for assigning a dollar value to media coverage. Mr. McGoldrick evaluated the AVE for the media coverage generated regarding the Four Corners region in the months and years after the Blowout and found that the Blowout generated approximately $1.2 billion in media coverage—a value equivalent to the total cost of all advertisements for three Super Bowls. *Id.* at 22.

Dr. Cantor critiques this analysis by claiming it "is refuted by the observed outcomes on Recreation and Tourism at the Farmington, San Juan County, and New Mexico levels of economic activity." Ex. B ¶ 39. This opinion misses the point and does not "refute" anything. It does not actually challenge that the Blowout generated $1.2 billion worth of media coverage. Instead, Dr. Cantor obfuscates the fact that she cannot actually challenge his findings by faulting Mr. McGoldrick for not evaluating economic behavior. *Id.* This is a rebuttal to an unexpressed opinion and is, therefore, improper rebuttal testimony, misleading, and not helpful to the jury.

**V.     Dr. Cantor Cannot Testify Regarding Undisclosed or Untimely Sur-Rebuttal Opinions**

Notwithstanding the foregoing arguments, New Mexico further seeks to exclude any opinions that Dr. Cantor purports to hold but did not state in either of her written expert reports or at her deposition. Federal Rule of Civil Procedure 26(a)(2)(B) requires that a party's disclosure of retained expert witnesses who may present opinion testimony under Federal Rules of Evidence 702, 703, or 705 be accompanied by a written report that contains, inter alia, "a complete statement of all opinions the witness will express and the basis and reasons for them." FED. R. CIV. P. 26(a)(2)(B)(i). Further, these opinions must be disclosed in accordance with the Court's Scheduling Order. FED. R. CIV. P. 26(a)(2)(D).

The Rule 26(e) requirement for supplementation does not give parties carte blanche to submit entirely new expert opinions without leave of court. Rule 26(e) requires a party to supplement or correct its discovery disclosures, including expert disclosures, if it learns that "in some material respect the disclosure is incomplete or incorrect" or as ordered by the Court. FED. R. CIV. P. 26(e); FED. R. CIV. P. 26(a)(2)(E). Therefore, an expert is permitted to supplement his or her report if, for example, he or she learns of a mistake in the original document; however, he or she is not permitted to rely on this Rule to provide entirely new opinions. *Leviton Mfg. Co. v. Nicor, Inc.*, 245 F.R.D. 524, 528 (D.N.M. 2007). To permit such "supplementation" could result in a never-ending series of sur-rebuttals, undermining the orderly disclosure of experts contemplated by the Federal Rules. *See Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1169 (D. Colo. 2006).

In his rebuttal report submitted on September 10, 2021, Dr. Cicchetti responded to certain critiques raised in Dr. Cantor's Initial Report by running sensitivity tests using regression

analyses. The results of those findings were included in Appendix D to Dr. Cicchetti's rebuttal report, which included "a regression analysis for the index comparison that shows before the GKM Spill the combined included industries tracked changes in the rest of New Mexico. After the Spill, these same combined included industries had a sharp decline relative to the rest of New Mexico. This analysis shows that the movements presented in the various charts are highly statistically significant." Ex. H at 25, D-1-2.

In response, Dr. Cantor prepared her own regression analyses and submitted them as a "supplemental production" prior to her deposition. Ex. D ("[T]he Federal Parties produce a supplemental document reflecting analysis by Robin Cantor, PhD, performed since receiving rebuttal reports."). New Mexico deposed Dr. Cantor regarding this supplemental production on November 8, 2021. She testified that the document contained "analysis that [she] did using the regression analysis that Dr. Cicchetti submitted in his rebuttal report" and confirmed that the document was prepared in response to his rebuttal report. Ex. C at 16:1-17. In these workpapers, Dr. Cantor took the regression analyses contained in Dr. Cicchetti's rebuttal report and layered additional factors on top of Dr. Cicchetti's model. *Id.* at 136:13-139:2.

Over a month after the conclusion of her deposition, however, Dr. Cantor again supplemented her analyses on December 9, 2021 with new workpapers containing further regression analyses. Ex. F ("[T]he Federal Parties produce supplemental documents reflecting analysis by Robin Cantor, Ph.D, ***performed following her deposition on November 8-9, 2021***." (emphasis added)). The documents in this production did not correct analyses otherwise contained in Dr. Cantor's Initial or Rebuttal Reports or discussed at her deposition; rather, they added entirely new analyses and apparently attempt to couch new opinions within a

23

"supplemental production" long after the close of Dr. Cantor's deposition. New Mexico is entirely unaware of what Dr. Cantor's opinion or intended testimony on the workpapers in the December supplemental production would be, as they post-date her deposition. Consequently, this supplemental production and any opinions that Dr. Cantor may intend to provide regarding the charts and workpapers therein are untimely, improper, and should be excluded.

## CONCLUSION

For the foregoing reasons, New Mexico respectfully requests that the Court strike and exclude the expert opinions and testimony of Robin Cantor, Ph.D related to New Mexico's damages.

Dated: June 17, 2022                    Respectfully submitted,

                                         */s/ William J. Jackson*
                                        William J. Jackson
                                        NM Fed. Bar 16-102
                                        John D.S. Gilmour
                                        NM Fed. Bar. 16-101
                                        Lana M. Rowenko
                                        KELLEY DRYE & WARREN LLP
                                        515 Post Oak Blvd., Suite 900
                                        Houston, TX 77027
                                        Telephone:     (713) 355-5000
                                        Facsimile:     (713) 355-5001
                                        Email:         bjackson@kelleydrye.com

                                        Andrew W. Homer
                                        KELLEY DRYE & WARREN LLP
                                        7825 Fay Avenue, Suite 200
                                        La Jolla, CA 92037
                                        Telephone:     (310) 712-6199
                                        Email:         ahomer@kelleydrye.com

Hector Balderas
Attorney General of New Mexico
P. Cholla Khoury
Assistant Attorney General
408 Galisteo Street
Villagra Building
Santa Fe, NM 87501
Telephone:      (505) 827-6000
Facsimile:       (505) 827-5826
Email:            ckhoury@nmag.gov

Marcus J. Rael, Jr.
Robles, Rael & Anaya, P.C.
500 Marquette Ave NW, Suite 700
Albuquerque, NM 87102
Telephone:      (505) 242-2228
Facsimile:       (505) 242-1106
Email:            marcus@roblesrael.com

*Attorneys for Plaintiffs*
*THE STATE OF NEW MEXICO and NEW*
*MEXICO ENVIRONMENT DEPARTMENT*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 17, 2022, the foregoing document was filed with the Court through the CM/ECF system and a copy thereof was served via the CM/ECF system upon all counsel of record.

*/s/ William J. Jackson*
William J. Jackson