IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

IN RE:  GOLD KING MINE RELEASE
IN SAN JUAN COUNTY, COLORADO                    No. 1:18-md-02824-WJ
ON AUGUST 5, 2015

This Document Relates to All Cases

### ORDER GRANTING IN PART AND DENYING IN PART THE STATE OF NEW MEXICO'S MOTION FOR PROTECTIVE ORDER

This matter comes before the Special Master on the Motion for a Protective Order Regarding Deposition Topics filed by the State of New Mexico on behalf of the New Mexico Environment Department.[1]  Doc. 884.  The United States filed its Response in Opposition as Document 901.  The Reply was filed as Document 929.  The Special Master has reviewed the pleadings, the exhibits, and the legal authorities cited in support of the arguments.  The Special Master also reviewed the briefing on the United States' Motion to Dismiss New Mexico's Tort Claims for Lack of Standing, Doc. 876, the Plaintiffs the State of New Mexico and the New Mexico Environment Department's Opposition Brief and Cross-Motion for Leave to Amend the Second Amended Complaint, Doc. 897, the United States' Reply Brief, Doc. 915, and the Plaintiffs the State of New Mexico and the New Mexico Environment Department's Reply Brief in Support of their Cross-Motion for Leave to Amend the Second Amended Complaint, Doc. 947, as well as the

---

[1] In this Order, the Special Master will use the term "the State of New Mexico' or the "the State" when referring to the Plaintiff or Plaintiffs that are named in the Complaint as the "State of New Mexico on behalf of the New Mexico Environment Department".  The use of the term "the State of New Mexico" or "the State" does not mean or imply that there are one or two Plaintiffs representing the State in this action or that the Special Master has made or implied a ruling on this issue raised in the United States' Motion to Dismiss New Mexico's Tort Claims for Lack of Standing, Doc. 876.  This issue does not need to be resolved in order to rule on this discovery dispute as explained in the order.

exhibits and the legal authorities cited therein. The Special Master reviewed these particular pleadings for additional background information and a better understanding of the issues raised.

A hearing on the Motion for a Protective Order was held on December 7, 2020 at which the State of New Mexico and the United States appeared and argued. The Navajo Nation, the Allen Plaintiffs, Sunnyside Gold Corporation, the Kinross Defendants, and Weston Solutions were also present at the hearing. Having reviewed the pleadings, exhibits, legal authorities, and the arguments, the Special Master orders that the Motion for a Protective Order Regarding Deposition Topics is granted in part and denied in part.

This discovery dispute arose as a result of a Notice of Deposition pursuant to Fed. R. Civ. P. 30(b)(6) directed to the named Plaintiff the State of New Mexico on behalf of the New Mexico Environment Department. The notice listed ten topics that on their face sought information from various New Mexico state agencies, institutions, departments, and two universities. The State of New Mexico objected to the scope of the topics and participated in a meet and confer with the United States, but the parties were unable to resolve their differences. Thereafter, the State of New Mexico brought its Motion for Protective Order.

The State of New Mexico argues that the only agency it represents in this lawsuit and has control over is the New Mexico Environment Department. The State argues that it cannot appoint someone from one of the other named agencies, departments, or institutions to answer the questions posed in the Rule 30(b)(6) Notice because it does not have the authority to appoint someone from the other state agencies, department, institutions, and universities listed in the Rule 30(b)(6) Notice of Deposition. The Special Master agrees. The New Mexico Attorney General

represents only one agency in this lawsuit - the New Mexico Environment Department.² The New Mexico Attorney General does not represent the other state agencies, departments, institutions, and universities listed in the Rule 30(b)(6) Notice in this lawsuit. This limitation applies whether the State of New Mexico brought this lawsuit on behalf of its citizens through the New Mexico Attorney General in order to assert claims for economic damages allegedly suffered by the State, <u>and</u> also on behalf of the New Mexico Environment Department, which is making claims for costs expended by the Department in response to the Gold King Mine release and for future expenses that are alleged will be incurred by the Department as a result of the Gold King Mine release <u>or</u> whether the State of New Mexico brought this lawsuit solely on behalf of the Environment Department. Neither the State of New Mexico through the New Mexico Attorney General nor the New Mexico Environment Department have the authority or ability to produce Rule 30(b)(6) witnesses from the named agencies, departments, and institutions in response to the Notice without the voluntary cooperation from these other state entities.

The New Mexico Attorney General is an elected official whose duties include the representation of the State of New Mexico in litigation. NMSA §8-5-2(B). The Attorney General does not answer to the Governor, who is a separately elected official. This dual form of governmental authority is known as a dual executive branch or divided executive branch. Most New Mexico state agencies and departments are under gubernatorial control, not the control of the New Mexico Attorney General. *See*, NMSA §§9-1-1 through 9-29-12. Agencies under

---

² The State of New Mexico contends that the Attorney General represents both the State of New Mexico on behalf of the New Mexico Environment Department by agreement of the Department and the Governor and the State of New Mexico as *parens patria* under its duty to protect its citizens.

gubernatorial control include the Taxation and Revenue Department, §9-11-4, the Tourism Department, §9-15A-3, the Department of Energy, Minerals and Natural Resources, §9-5a-3, whose programs include the Abandoned Mine Land Program, and the Environment Department, §9-7a-4.  Of the numerous agencies and departments under gubernatorial control, only the New Mexico Environment Department reached an agreement with the Attorney General to bring this lawsuit on its behalf.  *Transcript of Hearing, December 7, 2020, p. 8, lines 5-8 (hereinafter Tr.)*

Federal Rule of Civil Procedure 30(b)(6) states that in a deposition notice directed to an organization, "a party may name as the deponent … a governmental agency, or other entity and must describe with reasonable particularity the matters for examination.  The named organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf."   The Rule does not state that the person or entity to whom the notice is directed must have control over the deponent.  Instead, it requires consent by the officer, director, managing agent, or other person who is going to testify on an organization's behalf.[3] During the course of this litigation, the State of New Mexico has worked with various state agencies or departments to voluntarily produce information and has been able, as a result, to produce approximately 100,000  documents that were originally in the possession, custody, or control of agencies or departments other than the New Mexico Environment Department.  Doc.

---

[3]  The 1970 commentary to the Rule emphasized the new requirement of consent. The "organization shall then name one or more of its officers, directors, or managing agents, or other persons *consenting to appear and testify on its behalf* with respect to matters known or reasonably available to the organization. The organization may designate persons other than officers, directors, and managing agents, but *only with their consent*. Fed. R. Civ. P. 30 (emphasis added.)

884-2, Exhibit B to Motion for Protective Order. The State of New Mexico now argues that it cannot force other state agencies or departments, such as the Department of Taxation and Revenue or the Tourism Department, to produce a person to testify on behalf of the agency without the agency's or department's voluntary consent.

The United States candidly admitted during its argument at the December 7, 2020 hearing that its Notice of Deposition was directed to the Plaintiff the State of New Mexico on behalf of the New Mexico Environment Department in order to obtain binding testimony on the various topics listed in the Rule 30(b)(6) Notice. *Tr. p. 65, lines 25*. The State of New Mexico argued that it was willing to obtain voluntary witnesses on behalf of the state agencies or departments whose testimony would be binding "on these agencies on these topics" but argued that such testimony could not be binding on the State of New Mexico or the New Mexico Environment Department. *Tr. p. 63, lines 15-17*. The United States argued that the Rule 30(b)(6) testimony should be binding on the Plaintiff the State of New Mexico on behalf of the New Mexico Environment Department regardless of who the State of New Mexico designates as the appropriate witness(es), not just on the agencies or departments who may voluntarily consent to produce someone to testify on one or more topics listed in the Notice. This is the fundamental difference between the United States and the State of New Mexico and is what is at the heart of this discovery dispute.

The Special Master finds that regardless of who the New Mexico Plaintiff(s) is or are, the State of New Mexico cannot compel an independent state agency or department (other than the Environment Department) to produce documents or produce a witness to testify in response to the Rule 30(b)(6) Notice unless the state agencies or departments do so voluntarily in cooperation the

New Mexico Attorney General.  If  one or more persons from a state agency or department other than the New Mexico Environment Department consents on a voluntary basis to testify as to one or more of the topics listed in the Rule 30(b)(6) Notice, that testimony will be binding on his or her agency or department but will not be binding on either the Plaintiff the State of New Mexico or the Plaintiff the New Mexico Environment Department, if in fact both are determined to be parties to this lawsuit. Only testimony from a person representing the State of New Mexico or the State of New Mexico on behalf of the New Mexico Environment Department who is testifying on relevant topics listed in the Rule 30(b)(6) Notice will be binding on the State of New Mexico and the Department.

This ruling is supported by a number of cases across the United States that have dealt with similar discovery issues in states where the state has adopted a divided executive branch system. For example, in *New York ex. rel., Boardman v. National R.R. Passenger Corp*., 233 F.R.D. 259 (N.D.N.Y. 2006) (*Amtrak*), the State of New York, the Department of Transportation (DOT), and its commissioner brought a lawsuit against Amtrak alleging a breach of contract.  Amtrak sought Rule 34 discovery from a state agency, the office of the State Comptroller (OSC), whom the State claimed was not a party.  Under New York law, there is a separation of powers in the executive branch similar to the separation of powers in New Mexico.  As a result, state agencies are separate and independent entities with different functions and responsibilities.  "[W]e have accepted the legal premise that state agencies for most purposes are separate and distinct and are not viewed in the aggregate." *Id.* at 266.  The court noted that DOT did not have the legal right to the requested documents or the ability to obtain the documents.  If Amtrak wanted the requested documents, it

would need to serve a Rule 45 subpoena on OSC. While this ruling concerned Rule 34 and whether the documents were in the possession, custody, or control of a party, the principle underlying the separation of state agencies is still applicable.

Courts that have addressed this issue have found public policy reasons, as well as practical reasons, why state agencies should not be treated as a monolithic entity. In *Com. v. Ortho-McNeil-Jansen Pharmaceuticals, Inc.*, 30 Mass. L. Rptr. 377, 2012 WL 5392617 (Sup. Ct. Mass. 2012), an action was brought by the Commonwealth of Massachusetts on behalf of the citizens of its state who had used an anti-psychotic drug sold and marketed by the defendant. The defendant sought documents from the Commonwealth but stated that "it expected production from all political subdivision departments or agencies thereof" including fifteen named state agencies. *Id.* at *1. The court noted that the agencies and departments within the executive branch "do not speak with a single voice. In fact, they have different functions and spheres of responsibility." *Id.* at *2. A second concern was the relationship between the Attorney General, who brought this particular lawsuit as an enforcement action, and the independently elected governor which could lead to a potential challenge to the constitutional balance of power. Ultimately, the court held that the Attorney General of the Commonwealth must produce the relevant documents within all divisions in her office but that the defendant must serve subpoenas on the other state departments and agencies from which it sought documents. The State of New Mexico has similarly argued that the United States must serve Rule 45 subpoenas on the state agencies or departments that it does not represent or on the state agencies or departments from whom the State is unable to obtain voluntary compliance with the Rule 30(b)(6) notice.

Unreported cases that also address the separation of state agencies for discovery purposes include *In Re Jointly Managed R.S. 2477 Road Cases Litigation v. United States*, 2018 WL 2172934 (D. Utah 2018)(the state attorney general cannot force a separate state agency to produce documents); *Torres v. Artus*, 2016 WL 1105840 (W.D.N.Y. 2016); and *United States v. American Express*, 2011 WL 13073683 (E.D.N.Y. 2011)(state agencies are not parties and therefore cannot be compelled by their attorneys general to produce documents, but must be served with subpoenas.)

Both the United States and the State of New Mexico have addressed the case *of People ex. rel. Lockyer v. Superior Court*, 122 Cal. App.4th 1060 (Ct. App. 2004), which not only involved a document request but also deposition notices on the State of California (the People) seeking to depose persons most knowledgeable from three different state agencies or boards. The People filed a motion for a protective order arguing that it was improper to serve it with deposition notices for nonparty state agencies. On appeal, the appellate court ruled that the deposition notices should have been quashed. The court held that the state agencies and boards from which the defendant had sought depositions were not parties and the People could not be ordered to produce the persons most knowledgeable about the notice topics from those state agencies. Although the defendant was relying on a state rule of procedure that differs from Fed. R. Civ. P. 30(b)(6) because it requires the production of the witness who is most knowledgeable about a topic, the underlying principles are identical to the case at hand. The court determined that each California state agency was a separate entity, established under its own statutory or constitutional provisions. These agencies are responsible for maintaining their own records, establishing their own functions and duties, and

protecting their own particular interests. In fact, the court noted that "agencies' interests are often in conflict and one may sue another." *Id.* at 1079. Moreover, "[i]t would be unduly burdensome if any time the People are a party to litigation they are required to search for documents from any and all state agencies that the propounding party demands." *Id.* The court held "that to obtain documents and witnesses from state agencies, other than documents reflecting an agency's investigation related to the litigation, [the defendant] was required to serve subpoenas directly upon the agencies from which they sought this information." *Id.* at 1080. The Special Master finds these cases and their analysis of governmental agencies under the dual executive branch persuasive. The State of New Mexico, whether it is acting through the Attorney General or on behalf of the New Mexico Environment Department, similarly cannot produce witnesses to testify on the Rule 30(b)(6) Notice without the voluntary consent of the agency or department.

The United States has argued, however, that what it is seeking are representatives from the State of New Mexico or the State of New Mexico on behalf of New Mexico Environment Department to testify as to the topics in the Rule 30(b)(6) Notice and that it expects that the testimony of these representatives will be binding on the Plaintiff or Plaintiffs. The United States is not asking for representatives from other state agencies or departments to testify if that testimony is not going to be binding on the Plaintiff or Plaintiffs. As the United States explained in the hearing, the Notice is directed to the named Plaintiff in this action, whoever that may be. *Tr. p. 9, lines 14-15*. The Notice was not directed at the agencies or departments mentioned in the topics. Consistent with that position, the United States' stance during the meet and confer conferences was that the State of New Mexico "had to produce a witness from or on behalf of the Environment

9

Department for these topics." *Tr. p. 13, lines 23-25*.  The State of New Mexico argued that if it were to produce a witness from the Environment Department, for example, to testify about tax data that had been collected and produced in discovery, that the witness would simply testify that they know nothing about that topic. *Tr. p. 14, lines 2-10*.  In response the United States argued if the State of New Mexico or the Department claims not to have the information known to them or reasonably available to them as listed in the Rule 30(b)(6) Notice, "that would have implications for their own case." *Tr. pp. 19-20, lines 23-4*.  The United States further argued that it was not interested in issuing Rule 45 subpoenas on the various state agencies or departments because "that wouldn't give us binding testimony, binding admissions from the Plaintiffs, and that's what we're interested in here.  We want to know what the Plaintiff has to say about matters relevant to its own allegations." *Tr. p. 39, lines 12-19*.

The Special Master recognizes the quandary that has arisen.  The United States wants to obtain certain admissions from the Plaintiff the State of New Mexico or the New Mexico Environment Department on the allegations in the Second Amended Complaint, especially on the scope of its alleged damages.  The State of New Mexico argues that representatives from either the Attorney General's office or the New Mexico Environment Department are not knowledgeable about certain of these topics, and it would be a waste of time and resources to have these representatives testify.  At most, these representatives would be able to testify that in preparation for the State of New Mexico's or the New Mexico Environmental Department's case in chief the Attorney General's office obtained data from other agencies such as the Department of Taxation and Revenue or the Department of Tourism and turned the data over to experts who are in the

10

process of preparing their reports. The State of New Mexico says that most of the information being sought in the Rule 30(b)(6) Notice will be produced in the course of the production of its expert reports. Moreover, the State argues, if the United States really wants this information prior to the production of expert reports, it should approach the various state agencies and departments and try to obtain voluntary testimony on certain topics. The United States insists that it wants testimony that is binding on the Plaintiff or Plaintiffs, whoever that may be, and not testimony that is binding just on various state agencies and departments.

The Special Master is aware of the resources that have been expended so far in this lawsuit and is concerned about ordering depositions that will cost time, money, and effort and that in all probability may produce little of substance. However, the Special Master must balance this concern with the right of the United States to seek discovery regarding the State of New Mexico's and the New Mexico Environment Department's claims for damages. Therefore, the Special Master will order a representative from the State of New Mexico or the New Mexico Environment Department to testify on Topics 1(a) and 1(b), Topic 9, and Topic 10, as discussed below, to the extent the witness has knowledge of the topics, or if the information is readily available, even if the topic will most likely be the subject of upcoming expert reports and expert testimony. Any such testimony will be binding on the State of New Mexico and the State of New Mexico on behalf of the New Mexico Environment Department, if both entities are found to be plaintiffs, or the Department if it is found to be the sole plaintiff. In addition, the Special Master orders that if the United States requests, the State of Mexico will seek to obtain witnesses from other state agencies or departments on a voluntary basis (other than the New Mexico Environment Department) to

testify on the topics set forth in the Notice as modified below. Such testimony will be binding only on that state agency or department.

Concerning the Rule 30(b)(6) Notice itself, the Special Master finds that many of the topics listed in the Notice are overbroad and need to be modified. In sustaining the State of New Mexico's objections, the topics will be modified as follows:

The State of New Mexico has agreed to provide a representative from the New Mexico Environment Department to testify as to Topic 1(a) and 1(b). The testimony of the witness will be binding on the Plaintiff or Plaintiffs. The protective order is granted as to Topic 1(c) because it calls for a legal conclusion. The topic asks for the New Mexico Environment Department's authority and duties with respect to recovering economic damages for economic losses in the form of reduced business activity and lost tax revenues. A question that asks for a governmental department's legal basis to conduct activities and its legal duties with respect to those activities asks for legal conclusion and is not appropriate in a Rule 30(b)(6) deposition. *Quarrie v. Wells,* 2020 WL 5329886, *6 (U.S.D.C. NM 2020)("depositions, including 30(b)(6) depositions, are designed to discover facts, not contentions or legal theories.")

The State of New Mexico will produce a witness or witnesses who can testify regarding information known or reasonably available to it regarding Topics 2, 3, 4, 5, and 6, as modified below, that has not already been disclosed or is not publicly available.[4] Any witness presented by

---

[4] The Special Master recognizes that as a practical matter any witness(es) produced by the State of New Mexico to testify on these topics may not be able to offer much, if anything, in the way of substantive testimony but the United States is entitled to inquire about the requested topics that relate to the State of New Mexico's claims for damages. As the United States argued at the hearing, the witness may simply say the State does not have any new information reasonably available to it and the State will be relying on expert witness testimony on these topics. *Tr. pp. 54-55,*

the State of New Mexico will not be required to educate himself/herself regarding information available to other state agencies or departments

Topics 2 and 3, which are overbroad in time and need to have the definition of "abandoned mines" clarified, are modified as follows:

2. The work done by the New Mexico Abandoned Mine Land Program to identify and survey abandoned mines within the State of New Mexico including determining whether abandoned mines contain impounded water that could present an environmental hazard and/or present the risk of a blowout. For purposes of this topic the definition of "abandoned mine" will be as set forth by the Special Master in his July 27 Order (Doc. 748 at 3) and consistent with that Order, the topic is limited to the time period of January 1, 2010 through August 5, 2015. For purposes of this topic "environmental hazard" refers to releases which "may contain CERCLA hazardous substances and/or contaminants regulated under the Clean Water Act."

3. The practices, procedures and policies of the New Mexico Abandoned Mine Land Program with respect to remediation and/or reclamation of abandoned mines in the State of New Mexico, limited to site health and safety plans, opening abandoned mines, drilling into abandoned mines, measuring impounded water in abandoned mines, collecting information prior to conducting remediation and/or reclamation of an abandoned mine or attempting to access an abandoned mine, insuring the stability of walls or structures of abandoned mines during the work, and installation of sump basins or drainage ponds in connection with abandoned mines. For

---

*lines 22-2.*

purposes of this topic the definition of "abandoned mine" will be as set forth by the Special Master in his July 27 Order (Doc. 748 at 3) and consistent with that Order, the topic is limited to the time period of January 1, 2010 through August 5, 2015.

If the United States requests, the State of New Mexico will contact the Abandoned Mines Land Program to see if the Program will consent to have one or more persons voluntarily testify as to Topics 2 and 3. If so, that person or persons' testimony will be binding on the Abandoned Mines Land Program. If the Program is not willing to voluntarily produce a witness, the United States may issue a subpoena and a notice of deposition to the Program on these topics as clarified above.

Topic 4 is overbroad, unduly burdensome, and not proportional to the needs of the case because it asks for all assessments conducted on all factors affecting tax revenue to the present. The use of "any" and "all" is overbroad. It is modified to read:

4. Assessments that the New Mexico Department of Taxation and Revenue conducted after August 5, 2015 on the impact of the Gold King Mine release on the amount of tax revenue collected by the State of New Mexico.

If the United States requests, the State of New Mexico will contact the Department of Taxation and Revenue to determine if the agency voluntarily consents to provide a witness who can testify on this topic. If so, that person or persons' testimony will be binding on the Department of Taxation and Revenue. If the Department declines to voluntarily provide a witness, the United States may issue a subpoena and a notice of deposition to the Department of Taxation and Revenue on the topic as clarified above.

Topic 5 is also overbroad, unduly burdensome, and not proportional to the needs of the case because it asks for all assessments on factors affecting tourism to the present and is not limited to the impact of the Gold King Mine. It is modified to read:

5. Assessments that the New Mexico Department of Tourism has conducted after August 5, 2015 on the impact of the Gold King Mine release on tourism in the State of New Mexico.

If the United States requests, the State of New Mexico will contact the Department of Tourism to determine if the agency voluntarily consents to provide a witness who can testify on this topic. If so, that person or persons' testimony will be binding on the Department of Tourism. If the Department of Tourism declines to voluntarily provide a witness, the United States may issue a subpoena and a notice of deposition to the Department of Tourism on the topic as clarified above.

Topic 6 is also overbroad, unduly burdensome, and not proportional to the needs of the case because it asks for all assessment on all factors and is not limited in geographic location. It is modified to read:

6. Assessments that the New Mexico Department of Agriculture conducted after August 5, 2015 on the impact of the Gold King Mine release on agriculture in the County of San Juan, State of New Mexico.

If the United States requests, the State of New Mexico will contact the Department of Agriculture to determine if the agency voluntarily consents to provide a witness who can testify on this topic. If so, that person or persons' testimony will be binding on the Department of Agriculture. If the Department of Agriculture declines to voluntarily provide a witness, the United

States may issue a subpoena and a notice of deposition to the Department of Agriculture on the topic as clarified above.

The State of New Mexico need not produce a witness to testify regarding Topics 7 and 8 because they are overbroad, unduly burdensome, not proportional to the needs of the case, and unworkable as presently written. With regard to Topic 7, the United States agrees that it has identified a number of reports and assessments that have been conducted by agencies, departments, and institutions in New Mexico as shown in the chart attached to Document 901-3 and the arguments presented at the hearing on December 7, 2020. *Tr pp. 59-60, lines 20-9, p. 61, lines 19-24.* However, if the United States believes there are reports, studies, or assessments that the State of New Mexico, the United States, or some other party has not yet discovered, the United States may issue subpoenas to: 1) the New Mexico Energy, Minerals and Natural Resources Department, 2) the New Mexico Department of Game and Fish, 3) the New Mexico Department of Health, 4) the New Mexico Bureau of Geology and Mineral Resources, 5) the New Mexico Water Resources Research Institute, and 6) the New Mexico Institute of Mining and Technology requesting that the various agencies, departments, and institutes provide it with any report, assessment, or study conducted on the effect of the August 5, 2015 Gold King Mine release on the environment in New Mexico that has not been previously produced. The Special Master is reluctant to impose additional burdens on agencies, departments, and institutions that have previously produced, either through public records requests or prior subpoenas, all their reports, assessments, and studies. Therefore, the subpoenas must be limited to those reports, assessments, and studies that have not been previously produced or are not publicly available.

With regard to Topic 8, if the United States believes there are reports, studies, or assessments that the State of New Mexico, the United States, or some other party has not yet discovered on the effects of releases from the Sunnyside mine pool, the United States may issue a subpoena to: 1) the New Mexico Energy, Minerals and Natural Resources Department, 2) the New Mexico Department of Game and Fish, 3) the New Mexico Department of Health, 4) the New Mexico Bureau of Geology and Mineral Resources, 5) the New Mexico Water Resources Research Institute, and 6) the New Mexico Institute of Mining and Technology requesting that the various agencies, departments, and institutes provide it with any report, assessment, or study conducted on the effect of releases from the Sunnyside mine pool on the environment in New Mexico that has not been previously produced. As stated above, the Special Master is reluctant to impose additional burdens on agencies, departments, and institutions that have previously produced, either through public records requests or prior subpoenas, all their reports, assessments, and studies. Therefore, the subpoenas must be limited to those reports, assessments, and studies that have not been previously produced or are not publicly available.

Topics 9 and 10 will not be modified because the State of New Mexico has agreed to provide a witness pursuant to the Rule 30(b)(6) Notice to discuss these two topics. *Tr. p. 62, lines 20-22.* The testimony of the witness will be binding on the Plaintiff or Plaintiffs.

The arguments of counsel and the legal authorities have convinced the Special Master that there are public policy reasons as well as practical reasons why the Motion for a Protective Order must be granted in part and denied in part. The Motion for a Protective Order is granted insofar as the State of New Mexico is not required to provide persons from various agencies, departments,

17

or programs who consent to testify on the topics relevant to their respective various agencies, departments, or programs with the exception of the New Environment Department. However, as the State of New Mexico offered during the hearing, if the United States requests the State of New Mexico to do so, New Mexico will contact the various agencies, departments, or programs as discussed above to see if they are willing to voluntarily produce a person or persons who consent to testify on topics that pertain to that agency, department, or institution. If so, that testimony will be binding on that particular agency, department, or program only and not on the State of New Mexico. If the agency, department, or program is unwilling to provide a person to testify, the United States may issue a subpoena to the agency, department, or institution, in accordance with the discussion above. The Motion for a Protective Order is granted in part as to Topics 1(c), Topics 2 and 3, as modified, Topics 4, 5, and 6, as modified, and granted in full regarding Topics 7 and 8. The Motion for a Protective Order is denied as to Topics 1(a) and (b) and Topics 9 and 10.

IT IS SO ORDERED.

_____
SPECIAL MASTER HONORABLE ALAN C. TORGERSON

**THE PARTIES ARE NOTIFIED THAT WITHIN 21 DAYS OF SERVICE** of a copy of the order, report, or recommendations, they may file written objections with the Clerk of the Court pursuant to Federal Rule of Civil Procedure 53(f)(2). A party must file any objection with the

Clerk of the Court within the twenty-one-day period if that party wants the District Judge to hear their objections. If no objections are filed within the twenty-one-day period, the District Judge may adopt the order, report, or recommendations in whole. If filing a document for which a privilege is claimed, check the access limited to filer and the court only box. For questions about filing restricted access documents, please contact the CM/ECF Help Desk by email at cmecf@nmd.uscourts.gov (link sends e-mail) or by phone at 505-348-2075.