**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:21-cv-03327-MEH

THE STATE OF COLORADO, THROUGH THE
COLORADO NATURAL RESOURCES TRUSTEES,

     Plaintiff,

v.

SUNNYSIDE GOLD CORPORATION,

     Defendant.

## CONSENT DECREE

The State of Colorado ("State"), acting through the Executive Director of the Colorado Department of Public Health and Environment, the Executive Director of the Colorado Department of Natural Resources, and the Attorney General of the State of Colorado, who collectively serve as the Colorado Natural Resources Trustees ("Trustees") and Sunnyside Gold Corporation ("SGC"), enter into this Consent Decree to resolve SGC's alleged liability for assessment of and damages for injury to, destruction of, or loss of Natural Resources (as defined below in Section IV) of the State resulting from the release of hazardous substances pursuant to Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607.

## I. BACKGROUND

1. Concurrent with the lodging of this Consent Decree, the State has filed a complaint ("Complaint") against SGC alleging injuries to Natural Resources of the State under the trusteeship of the Trustees resulting from releases of hazardous substances within the Bonita Peak Mining District Superfund Site ("Site"). The State alleges that SGC caused or contributed to releases, which caused acidic, metals-laden mine wastewater to enter the Upper Animas River watershed. The Parties agree that SGC need not file an Answer to the Complaint.

2. SGC does not admit any liability to the State arising out of transactions or occurrences alleged in the complaint.

3. On May 8, 1996, the District Court for the City and County of Denver, State of Colorado, approved and entered a consent decree between SGC and the Colorado Water Quality Control Division, Colorado Department of Public Health and the Environment ("CWQCD") in *Sunnyside Gold Corporation v. Colorado Water Quality Control Division, Colorado Department of Public Health and the Environment*, No. 94 CV 5459, ("CWQCD 1996 Consent Decree" (as further defined below in Section IV), which resolved litigation related to the State's Water Quality Control Act, C.R.S. § 25-8-101 *et seq*.

4. Pursuant to a settlement reached in October, 2021, in the MDL Litigation (as defined below in Section IV), agreement on a consent decree has been reached by and among SGC, the State, the United States, and other parties, ("CO-US 2021 Consent Decree"), relating to the Site. This settlement resolved pending litigation for alleged claims and potential claims against SGC under §§ 107(a) and 113(g)(2) of CERCLA for reimbursement of, or contribution towards, response costs incurred or to be incurred for response actions taken or to be taken by the United

States and the State in connection with the release or threatened release of hazardous substances at the Site, but did not resolve and reserved the State's rights with respect to assessment of and damages for injuries to Natural Resources. SGC signed the CO-US 2021 Consent Decree on November 4, 2021, and the State and other parties are in the process of signing it, and it will be lodged before the court presiding over the MDL Litigation after it has been fully signed. SGC and the State expect the CO-US 2021 Consent Decree to be approved and entered, but if that does not occur, then the references to the CO-US 2021 Consent Decree in Paragraphs 18, 18b and 23 shall be null and void.

5. The State and SGC agree, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that settlement of this matter will avoid prolonged and complicated litigation between the Parties, and this Consent Decree is fair, reasonable, and in the public interest.

THEREFORE, with the consent of the Parties to this Consent Decree, it is ORDERED:

## II.    JURISDICTION

6. The Court has jurisdiction over the subject matter of this action pursuant to CERCLA §§ 107(a) and 113(b), 42 U.S.C. §§ 9607 and 9613(b), and 28 U.S.C. §§ 1331 and 1345.

7. Solely for the purposes of this Consent Decree, SGC waives all objections and defenses that it may have to subject matter jurisdiction of, personal jurisdiction of, or venue in the Court.

### III.  PARTIES BOUND

8.  This Consent Decree is binding upon the State and upon SGC and its successors and assigns. Any change in ownership or corporate or other legal status, including, but not limited to, any transfer of assets or real or personal property, shall in no way alter the status or responsibilities of SGC under this Consent Decree.

### IV.  DEFINITIONS

9.  Unless otherwise expressly provided in this Consent Decree, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated at 43 C.F.R. Part 11 and 40 C.F.R. Part 300 and will have the meaning assigned to them in CERCLA or such regulations. All other words will be assigned their normal meaning. Whenever terms listed below are used in this Consent Decree, the following definitions will apply:

"Affiliate" means any entity that, directly or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, the subject entity or entities;

"CERCLA" means the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-9675;

"Complaint" has the meaning ascribed in Paragraph 1 in the Background section of this Consent Decree;

"Consent Decree" means this Consent Decree;

"Court" means the United States District Court for the District of Colorado in which the Complaint has been filed, or the court presiding over the MDL Litigation if the proceedings on the Consent Decree are transferred to such court;

"CO-US 2021 Consent Decree" has the meaning ascribed in Paragraph 4 in the Background section of this Consent Decree;

"CWA" means the Federal Water Pollution Control Act, also known as the Clean Water Act, 33 U.S.C. §§ 1251-1387, as amended by the Oil Pollution Act of 1990;

"CWQCD" has the meaning ascribed in Paragraph 3 in the Background section of this Consent Decree;

"CWQCD 1996 Consent Decree" means the Consent Decree approved and entered on May 8, 1996, by the District Court for the City and County of Denver, State of Colorado, between SGC and the CWQCD in *Sunnyside Gold Corporation v. Colorado Water Quality Control Division, Colorado Department of Public Health and the Environment,* No. 94 CV 5459, and its four amendments approved and entered April 14, 1997; January 4, 1999; October 13, 2000; and December 6, 2002, including all appendices thereto;

"Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal or State holiday, the period will run until the close of business of the next working day;

"Effective Date" means 30 Days from the date that the Court enters the Consent Decree, unless an appeal of the entry of judgment is filed during the 30-Day period; if an appeal is taken, the Effective Date means the date on which the Court's judgment is affirmed;

"Gold King Release" means the August 5, 2015 release of an estimated three million gallons of water from the Gold King Mine Level 7 adit, resulting in acid mine drainage and approximately 880,000 pounds of heavy metals flowing into Cement Creek, a tributary of the Animas River;

"MDL Litigation" means the Multidistrict Litigation matters centralized in the District of New Mexico for pretrial proceedings, pursuant to the Transfer Order by the United States Judicial Panel on Multidistrict Litigation, *In Re: Gold King Mine Release in San Juan County, Colorado, on August 5, 2015,* MDL No. 2824. MDL Litigation includes those matters with individual docket numbers 16-cv-465-WJ-LF; 16-cv-931-WJ-LF; 18-cv-319-WJ; and 18-cv-744-WJ;

"Natural Resource" or "Natural Resources" means land, fish, wildlife, biota, air, water, ground water, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the State;

"Natural Resource Damages" means any and all damages and costs, for purposes of CERCLA §§ 107(f)(1) and 107(a)(4)(C) to "Natural Resources" as defined in CERCLA § 101(16), and for purposes of CWA § 311((f)(4) or (f)(5), 33 U.S.C. § 1321(f)(4) or (f)(5), including any and all damages, costs, expenses and interest that may be recovered by a Natural Resource Trustee pursuant to 43 C.F.R. § 11.15, and any and all damages and costs under similar State laws, including common law claims, for Natural Resources;

"Paragraph" means a portion of this Consent Decree identified by an Arabic numeral;

"Party" or "Parties" means the State of Colorado and/or SGC;

"Section" means a portion of this Consent Decree identified by a Roman numeral;

"SGC" has the meaning ascribed in the initial paragraph of this Consent Decree;

"SGC Related Entity" or "Related Entities" means: (i) SGC's successors and assigns; (ii) SGC's former or current officers, directors and employees, but only to the extent that the liability of any such person is based on acts and/or omissions which occurred in the scope of the

person's employment or capacity as an officer, director, and employee; (iii) Affiliates of SGC ("SGC Affiliates"), specifically including: Kinross Gold Corporation and Kinross Gold U.S.A., Inc., each of which is an indirect parent company of SGC, and (iv) SGC's Affiliates' successors and assigns;

"Site" means the Bonita Peak Mining District Superfund Site in San Juan County, Colorado, EPA Docket ID No. EPA-HQ-OLEM-2016-0152, as published in the Federal Register on September 9, 2016, 81 Fed. Reg. 62397. The definition for this Site will be construed to include all areas of the Site ever defined or described by the U.S. Environmental Protection Agency ("EPA") in relation to the National Priorities List, 40 C.F.R. Part 300, including any further expansion of such Site as may in the future be determined by EPA;

"State" has the meaning ascribed in the initial paragraph of this Consent Decree; and

"Trustees" has the meaning ascribed in the initial paragraph of this Consent Decree.

## V. STATEMENT OF PURPOSE

10. By entering into this Consent Decree, the mutual objective of the Parties is to avoid litigation by resolving SGC's alleged liability for Natural Resource Damages resulting from releases of hazardous substances within the Site. Subject to the terms and conditions herein, this Consent Decree is intended to provide finality and the broadest protection afforded by law to SGC and SGC Related Entities with respect to such alleged liability.

## VI.  PAYMENT OF SETTLEMENT AMOUNT

11. SGC agrees to pay the State a settlement in the amount of one million, six hundred thousand dollars ($1,600,000), broken down as follows:

   a. One million, two hundred thousand dollars ($1,200,000) to settle the State's claims for Natural Resource Damages resulting from the Gold King Release; and

   b. Four hundred thousand dollars ($400,000) to settle the State's claims for Natural Resource Damages resulting from other releases within the Site.

12. Although the State may file this judgment as, and where necessary to preserve, secured creditor status, SGC acknowledges that such filing is not a condition precedent to the State's secured creditor status. This judgment shall remain in effect until SGC has complied with all requirements in this Consent Decree. Upon approval and entry, this Consent Decree shall constitute the final judgment for resolution of the State's Natural Resource Damage claims against SGC.

13. <u>Payment instructions</u>. Payment pursuant to Paragraph 11 shall be made within thirty (30) Days of the Effective Date. Payments to Colorado shall be made via wire transfer and shall reference "Bonita Peak Mining District and Gold King Release Settlement" and "CDPHE." Wire information is as follows:

> Bank Name: Wells Fargo
> Bank Address: 1675 Broadway, Suite 2700, Denver, CO 80202
> Account Name: Treasurer State of Colorado
> Account Number: 4120280912
> ABA for Wires & ACHs: 121000248
> Type of Account: Checking

On the same Day that funds are wired, SGC shall send written notification of the transfer via email and U.S. Mail to:

> Colorado Department of Public Health and Environment HMWMD
> Attn: Jennifer Talbert, B2
> 4300 Cherry Creek Drive South
> Denver, CO 80246-1530
> jennifer.talbert@state.co.us

### VII. EXPENDITURE OF SETTLEMENT FUNDS

14. Upon deposit, the funds paid to the State pursuant to this Consent Decree shall be used to assess damages and restore, replace, or acquire Natural Resources equivalent to injured resources. The monies in the Fund may not be borrowed or used for any other purposes.

### VIII. FAILURE TO COMPLY WITH CONSENT DECREE

15. If any amounts due under Paragraph 11 are not paid by the required date, interest shall accrue on the unpaid balance through the date of full payment. The rate of interest shall be the rate established in CERCLA § 107(a)(4), 42 U.S.C. § 9607(a)(4).

16. If any amounts due under Paragraph 11 are not paid by the required date, SGC shall be in violation of this Consent Decree and shall pay, as a stipulated penalty, one hundred dollars ($100) per Day that such payment is late. Stipulated penalties are due and payable within thirty (30) Days of the date of demand for payment by the State. All payments under this Paragraph shall be identified as "stipulated penalties" and made pursuant to the instructions in Paragraph 13. Penalties provided for under this Paragraph shall accrue regardless of whether the State has notified SGC of the violation or made a demand for payment, but need only be paid upon demand. All penalties provided for under this Paragraph shall begin to accrue on the Day

after payment is due and shall continue to accrue through the date of payment. The State may waive all or a portion of any stipulated penalties incurred via written notice to SGC.

## IX.     COVENANT NOT TO SUE BY STATE

17. In consideration of the payments that will be made by SGC pursuant to this Consent Decree, and except as specifically provided in Section X (Reservation of Rights by State), the State covenants not to sue or to take administrative action against the SGC or SGC Related Entities under CERCLA § 107 (including §§ 107(a) and 107(f)) or Section 113(f), 42 U.S.C. §§ 9607(a) and (f) or § 9613(f), or under CWA § 311((f)(4) or (f)(5), 33 U.S.C. § 1321(f)(4) or (f) (5), or under similar State laws, including common law claims, for Natural Resource Damages caused by or otherwise relating to or arising from SGC's or a SGC Related Entity's ownership, actions, non-actions or conduct within the Site. This covenant extends to SGC Related Entities only insofar as the liability of such entity, and its successors and assigns, relates to the Site and its capacity as an SGC Related Entity.

## X.     RESERVATION OF RIGHTS BY STATE

18. <u>General Reservations.</u> The State reserves all rights against SGC and SGC Related Entities not expressly included in Section IX, subject to the applicable terms and covenants agreed to and provided by the State and CWQCD under the CWQCD 1996 Consent Decree and the CO-US 2021 Consent Decree. Notwithstanding any other provision of this Consent Decree, the covenant not to sue by the State in Section IX shall apply only to matters addressed in that Section and shall not apply to the following:

a. Claims based on a failure by SGC to satisfy any requirement of this Consent Decree;

b. The authority of the State to enforce the requirements of the Colorado Hazardous Waste Act, Colo. Rev. Stat. §§ 25-15-101 to -515 or other applicable statutory or common law to seek or obtain relief other than Natural Resource Damages from SGC, subject to the applicable terms and covenants agreed to and provided by the State and CWQCD under the CWQCD 1996 Consent Decree and the CO-US 2021 Consent Decree;

c. Criminal liability, if any; or

d. Claims arising from the past, present, or future disposal, release, or threat of a release of a hazardous substance, pollutant, or contaminant not associated with the Site.

## XI.   COVENANT NOT TO SUE BY SGC

19. SGC covenants not to sue and agrees not to assert any claims or causes of action against the State (including all employees, agents, contractors, departments, agencies, administrations, and bureaus thereof) related to Natural Resource Damages arising out of a release of a hazardous substance within the Site. The covenant not to sue granted in this Paragraph shall be binding on SGC Related Entities.

## XII.   EFFECT OF SETTLEMENT

20. Except as provided in Paragraphs 10, 17, 18, 19, and 21 regarding SGC Related Entities, nothing in this Consent Decree will be construed to create any rights in, or grant any cause of action to, any person or entity not a Party to this Consent Decree. The State and SGC expressly

reserve all rights, defenses, claims, demands, and causes of action they may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person that is not a Party to this Consent Decree.

21. The Parties agree, and by entering into this Consent Decree, the Court finds, that this Consent Decree constitutes a judicially-approved settlement and entitles the SGC and SGC Related Entities protection from contribution actions or claims as provided by CERCLA § 113(f), 42 U.S.C. § 9613(f), as of the Effective Date for all "matters addressed" in this Consent Decree. The "matters addressed" in this Consent Decree are recovery for Natural Resource Damages for injury to, destruction of, or loss of Natural Resources, including the reasonable costs of assessing such injury, destruction, or loss incurred or to be incurred as a result of releases of hazardous substances within or associated with the Site.

### XIII. RETENTION OF JURISDICTION

22. The Court will retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree.

### XIV. INTEGRATION

23. This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied herein. The Parties expressly acknowledge that there are no other representations, agreements, or understandings related to the settlement other than those expressly contained in this Consent Decree. No other document, nor any representation, inducement, agreement, understanding, or promise constitutes any part of this Consent Decree or the settlement it represents, nor shall any other document be used in construing the terms of this Consent Decree. Notwithstanding the foregoing, this Consent

Decree does not alter or otherwise affect the terms and provisions of either the CWQCD 2016 Consent Decree or the CO-US 2021 Consent Decree.

### XV.   LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

24. This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The Parties each reserve the right to withdraw or withhold consent if the comments regarding the Consent Decree disclose facts or other considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.

25. If, for any reason, the Court should decline to approve this Consent Decree in the form presented, the Parties agree to reasonably cooperate with each other to make additional filings addressing the reasons the Court declined to approve the Consent Decree. If Court approval is not obtained, or if approval and entry is subsequently vacated on appeal of such approval and entry, either Party may unilaterally withdraw from the Consent Decree and the Consent Decree shall be null and void and the terms of the Consent Decree shall be inadmissible pursuant to Fed. R. Evidence 408 in any litigation between the Parties, and the State agrees to dismiss the Complaint without prejudice.

### XVI.   SIGNATORIES/ SERVICE

26. Each undersigned representative of the State and SGC certifies that he or she is authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

## XVII.  **FINAL JUDGMENT**

27. Upon entry of this Consent Decree by the Court, this Consent Decree will constitute the final judgment between and among the State and SGC with respect to the matters in this Consent Decree. The Court enters this judgment as a final judgment under Fed. R. Civ. P. 54 and Fed. R. Civ. P. 58.

SO ORDERED THIS _18th___ DAY OF _Feb.__, 2022.

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE

**FOR THE STATE OF COLORADO:**

/s/ Philip J. Weiser                              Dated December 10, 2021
PHILIP J. WEISER
Attorney General
Colorado Natural Resources Trustee


/s/ Shaun McGrath                              Dated December 10, 2021
SHAUN MCGRATH
Director, Environmental Programs,
    Colorado Department of Public Health and Environment
For Jill Hunsaker Ryan, Executive Director,
    Colorado Department of Public Health and Environment
Colorado Natural Resources Trustee


/s/ Dan Gibbs                              Dated December 10, 2021
DAN GIBBS
Executive Director, Colorado Department of Natural Resources
Colorado Natural Resources Trustee


Approved as to form:

/s/ Mary Emily Splitek                              Dated December 10, 2021
MARY EMILY SPLITEK
Assistant Attorney General
Colorado Attorney General's Office

**FOR SUNNYSIDE GOLD CORPORATION:**

*/s/ Martin Litt*                                            Dated December 6, 2021
Martin Litt
President & General Counsel

Approved as to form:

*/s/ Neil G. Westesen*                              Dated December 6, 2021
NEIL G. WESTESEN
Crowley Fleck, PLLP
Counsel for SGC